Marshall, C. J.
 

 Sam Tari was tried before John S. Rutledge, a justice of the peace in Cuyahoga county, for violation of the statutes of Ohio relating to the unlawful traffic in intoxicating liquors. He was tried upon two separate charges, viz., the unlawful possession of intoxicating liquors, and having in his possession property designed
 
 *482
 
 for the manufacture of liquor intended for use in violation of law. When the officers entered his apartment, they found him engaged in operating a still of 100 gallons capacity, and also found 59 barrels of mash and 5 gallons of whisky. He did not testify in his own behalf. He was found guilty of both offenses, and was assessed a fine of $800 for the unlawful possession of intoxicating liquors and one of $950 for the unlawful possession of property designed for the manufacture of liquors. Error was prosecuted to the court of common pleas, where the judgment of the justice of the peace was affirmed. Error was then prosecuted to the Court of Appeals, where the case was heard on April 25, 1927, and the judgment again affirmed. Thereupon a petition in error was filed in this court as of right, claiming that a constitutional question was involved; and a motion to certify was also filed. The motion to certify was allowed
 

 At the trial of the case before the justice of the peace no objection was made that the justice of the peace was disqualified, or that he had any interest in the controversy or the outcome of it; nor was it claimed that any questions of due process of law were involved. No such questions were presented in the argument of the case on error in the court of common pleas. The case of
 
 Tumey
 
 v.
 
 State,
 
 273 U. S., 510, 47 S. Ct., 437, 71 L. Ed., 749, 50 A. L. R., 1243, was decided by the Supreme Court of the United States on March 7, 1927, and, when this controversy came on for hearing in the Court of Appeals on April 25, 1927, counsel for Tari, for the first time, urged the interest of the justice, and his disqualification, and that Tari had been denied due process of law.
 

 
 *483
 
 In this particular case very meager briefs were filed by counsel for plaintiff in error, but the case involves the same identical questions involved in causes numbered 20506 and 20507 in this court,
 
 (State
 
 v.
 
 Allen
 
 and
 
 State
 
 v.
 
 Williams, ante,
 
 470, 159 N. E., 591), and we have therefore examined with great care all of the briefs filed in those cases on the part of counsel of record and of counsel who have filed briefs
 
 amici curiae
 
 for the respective parties.
 

 All of the arguments in these three cases, and other related cases considered concurrently herewith, are based upon the case of
 
 Tumey
 
 v.
 
 State,
 
 273 U. S., 510, 47 S. Ct., 437, 71 L. Ed., 749, 50 A. L. R., 1243, decided March 7, 1927, by the Supreme Court of the United States. It is contended, on the one hand, that the controlling elements of the
 
 Tumey case
 
 are exactly parallel to the instant controversy, and that the principles decided in that case are controlling and decisive of this case. It is contended on the other hand that the essential elements of the
 
 Tumey case,
 
 and the facts out of which the decision grew, were so different that it does not authorize the reversal of this judgment.
 

 Lest there be the slightest misapprehension upon the subject, it should be stated at the very outset of this opinion that the
 
 Tumey case
 
 interprets and applies the Fourteenth Federal Amendment to the procedure in the trial court in that case, and that we fully recognize the authority of that court to define the meaning, scope, and application of the Fourteenth Amendment, and that we further recognize the binding force of the pronouncements
 
 *484
 
 of that court in all questions involving due process upon all courts of all states in the Union. We respect not only the authority of that judgment, but we respect the judgment itself.
 

 It is contended, on the one hand, that the Ohio statutes conferring jurisdiction upon magistrates in Ohio to try misdemeanor cases were unconstitutional, and that the judgments of all magistrates, where the collection of fees was dependent upon conviction, were utterly null and void. As a logical result of that view, it was further contended that those magistrates were without jurisdiction either of the subject-matter or of the person, in the attempted trial of misdemeanor cases.
 

 It is contended, on the other hand, that the Supreme Court of the United States declared no statutes unconstitutional, and that it was only decided that magistrates having a substantial interest in the event of the trial were disqualified, and that their judgments were therefore voidable.
 

 Having carefully read, and many times re-read, the opinion in the
 
 Turney
 
 case, we confidently and emphatically assert that we find nothing obscure, or ambiguous, or of doubtful meaning, in a single sentence of that opinion. It should be said in fairness that counsel have not pointed out any ambiguities or words or phrases of doubtful meaning, but they have sought to draw inferences from the language used which in their judgment indicate that the court meant to go very much farther than the definite expressions contained in the opinion. We are convinced that the court not only meant all that it said, but that it said all that it meant. We confidently assume that the Supreme Court of
 
 *485
 
 the United States had fully in mind the far-reaching consequences of its decision, and that it also had clearly in mind the well-settled limitations of that court upon its power and authority to interpret the statutes of a state, and of the equally well-settled right of a state finally to determine the jurisdiction of its courts. Having carefully studied the Turney opinion in the light of all of the authorities cited and quoted, and all of the additional authorities cited and commented upon in the voluminous briefs of counsel, we are unable to find that that court has departed in the slightest particular from the current of the former opinions of that court defining the line of demarcation between federal and state authority.. Nowhere in the United States Supreme Court reports is this line ¡more clearly and definitely stated than in the case of
 
 Standard Oil Co.
 
 v.
 
 Missouri,
 
 224 U. S., 270, 32 S. Ct., 406, 56 L. Ed., 760, Ann. Cas., 1913D, 936. At pages 280 and 281 of the opinion of Mr. Justice Lamar (32 S. Ct., 409) we find the following:
 

 “It is, of course, essential to the validity of any judgment that the court rendering it should have had jurisdiction, not only of the parties, but of the subject-matter.
 
 Chicago, B. & Q. Ry. Co.
 
 v.
 
 Chicago,
 
 166 U. S., 226, 234, 247 [17 S. Ct., 581, 41 L. Ed., 979], But it is equally well settled that it is for the Supreme Court of a state finally to determine its own jurisdiction and that of other local tribunals, since the decision involves a construction of the laws of the state by which the court was organized. In this case the Constitution of Missouri declared that 'the Supreme Court shall have power to issue writs of
 
 habeas corpus, quo warranto, certiorari
 
 
 *486
 
 and
 
 other
 
 remedial writs, and to hear and determine the same.’ Its decision and judgment necessarily imply that under that clause of the Constitution it had jurisdiction of the subject-matter and authority to enter judgment of ouster and fine in civil
 
 quo warranto
 
 proceedings. That ruling is conclusive upon us regardless whether the judgment is civil or criminal or both combined.
 
 Standard Oil Co.
 
 v.
 
 Tennessee,
 
 217 U. S., 413, 420 [30 S. Ct., 543. 54 L. Ed., 817].”
 

 Further proceeding in that opinion, Mr. Justice Lamar declares the essential principle involved:
 

 “The federal question is whether,
 
 in that court, with such jurisdiction, the defendants were denied due process of law.”
 

 Much more appears in that opinion clearly indicating that, while a state can fix, determine, and define the jurisdiction of its courts, it is still open to the United States Supreme Court to determine whether a jurisdiction
 
 so exercised
 
 operates as a denial of due process of law. In other words, there is a clear distinction between jurisdiction and the exercise of that jurisdiction. The one is the institution, the other is the machinery by which it operates, commonly called the procedure.
 

 The federal government is one of delegated powers, and those powers do not include the right either to prescribe the jurisdiction of the state courts or to limit or abridge or regulate their jurisdiction, as defined and prescribed by the state government. The only power of the federal government over the state courts is that conferred by the Fourteenth Amendment, whereby litigants are guaranteed that in the
 
 exercise
 
 of their jurisdiction
 
 *487
 
 courts shall observe the injunctions of that amendment. True, a state statute, which would definitely and in terms attempt to confer jurisdiction upon a state court, which would be violative of the well-settled principles of due process or equal protection of the laws, would be unconstitutional. But why discuss or even state a proposition so anomalous? No state Legislature would enact such a statute, and no state court would apply or enforce it. The statutes involved in the discussion in the
 
 Tumey case
 
 and those of the instant case are of a wholly different nature.
 

 The opinion in the
 
 Tumey case
 
 is in perfect accord with this proposition, because it states, “Counsel for the state argue that it has been decided by this court that the Legislature of a state may provide such system of courts as it chooses,” etc., and then proceeds to declare that this is true, and cites in support the case of
 
 Missouri
 
 v.
 
 Lewis,
 
 101 U. S., 22, 30, 25 L. Ed., 989. From the opinion in that case we quote:
 

 “The amendment [Fourteenth Amendment] could never have been intended to prevent a State from arranging and parceling out the jurisdiction of its several courts at its discretion. No such restriction as this could have been in view, or could have been included, in the prohibition that ‘no State shall deny to any person within its jurisdiction the equal protection of the laws.’ It is the right of every State to establish such courts as it sees fit, and .to prescribe their several jurisdictions as to territorial extent, subject-matter, and amount, and the finality and effect of their decisions, provided it does not encroach upon the proper jurisdiction
 
 *488
 
 of the United States, and does not abridge the privileges and immunities of citizens of the United States, and does not deprive any person of his rights without due process of law, nor deny to any person the equal protection of the laws, including the equal right to resort to the appropriate courts for redress.”
 

 It is argued in the instant case that the statutes conferring jurisdiction upon justices of the peace, mayors, municipal and police judges are unconstitutional, and the claims of unconstitutionality of those statutes are grounded upon the decision in the
 
 Tumey case.
 
 We have therefore taken the trouble to ascertain the claims of counsel for Tumey in the argument of the
 
 Tumey case.
 
 From the brief we quote the following:
 

 “The Ohio liquor statutes are unconstitutional because they provide for a money-making judicial system heretofore unknown in criminal law. The mayor is given county-wide jurisdiction, and the village receives half of the fines in these state cases. For the first time in Ohio’s legal history the prosecutor and secret service men share in the fines, the mayor receiving fees.”
 

 This is all that is found in the brief upon the subject of constitutionality of statutes. We find that language decidedly obscure. If it was meant by that language to claim that all of the statutes in the brief (Sections 3019, 4248, 4255, 4258, 4259, 4262, 4270, 6212-18, 6212-19 and 6212-37, General Code) were unconstitutional, then such claim is consistent with the position taken by counsel in the instant controversy. If it was only intended to claim that the statutes relating to the division of
 
 *489
 
 the fines between the state, the village, the prosecutor, and the secret service men were unconstitutional, as the language seems to indicate, then counsel have taken an advanced position in the argument of the instant case. In either event it is significant that, while the opinion in the
 
 Tumey case
 
 quotes every one of these statutes, it has carefully refrained from declaring the unconstitutionality of a single statute. On the other hand, that opinion definitely states that the state has power to provide for county-wide jurisdiction giving the mayor of a small village a right to hear and decide offenses committed in a metropolitan city in the same county, and further declares that:
 

 “It is completely within the power of the Legislature to dispose of the fines collected in criminal cases as it will, and it may therefore divide the fines as it does here, one-half to the State and one-half to the village by whose mayor they are imposed and collected. It is further said with truth that the Legislature of a state may, and often ought to, stimulate prosecutions for crime by offering to those who shall initiate and carry on such prosecutions rewards for thus acting in the interest of the state and the people. The Legislature may offer rewards or a percentage of the recovery to informers.
 
 United States
 
 v.
 
 Murphy & Morgan,
 
 16 Pet., 203 [10 L. Ed., 937]. It may authorize the employment of detectives.”
 

 It will be observed from the foregoing quotation from the brief of counsel that the Supreme Court was importuned to declare the lack of jurisdiction of the magistrates, because the statutes conferring county-wide jurisdiction and division of fines
 
 *490
 
 created “a money-making judicial system,” and that the laws creating this condition were therefore unconstitutional. The Supreme Court answered that argument by declaring those so-called odious laws to be valid, and did not at any place in the opinion declare any particular law to be unconstitutional.
 

 No law should be declared unconstitutional unless it is clearly so, and no declaration of unconstitutionality should be permitted to rest upon inference or be aided by innuendo. For more than a half century mayors of cities and villages have been constituted as courts for the trial of misdemeanor cases, and that the Ohio Legislature had the power to confer that jurisdiction is too patent to admit of controversy. We do not understand that any attack upon that jurisdiction is made in this case, or that it was made in the
 
 Tumey case.
 
 The attack was upon other statutes whereby a system was created, and those statutes were definitely declared to be constitutional.
 

 Let us next inquire whether magistrates in Ohio can acquire jurisdiction over the person of a violator of one of the laws defining a misdemeanor. Jurisdiction over the person is acquired by process lawfully issued out of a court, followed by the arrest and arraignment of the accused, and his plea to the charge. This proposition seems so elementary that there would seem to be no justification for citation of authority, and yet Judge Ranney, in the case of
 
 Sheldon’s Lessee
 
 v.
 
 Newton,
 
 3 Ohio St., 494, has stated the proposition so tersely, so cogently, and so conclusively, that a quotation of three of the syllabi of that case will be in order:
 

 
 *491
 
 “The power to hear and determine a cause is jurisdiction; and it is
 
 coram judice
 
 whenever a case is presented, which brings this power into action.
 

 “But before this power can be affirmed to exist, it must be made to appear that the law has given the tribunal capacity to entertain the complaint against the person or thing sought to be charged or affected; that such complaint has actually been preferred; and that such person or thing has been properly brought before the tribunal to answer the charge therein contained.
 

 “When these appear, the jurisdiction has attached; the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred ; and whether determined rightfully or wrongfully, correctly or erroneously, is alike immaterial to the validity, force, and effect of the final judgment, when brought collaterally in question.”
 

 Judge Ranney has for more than a half century been recognized as the intellectual giant who vitalized the Constitution of 1851, and his pronouncements have been so universally respected by the bench and bar of this state that his opinions are seldom called in question.
 

 While it is well- settled that jurisdiction over the subject-matter cannot be conferred by consent, it is equally well settled that a submission on the part of a defendant without objection to being tried completes the jurisdiction over the person, and it is conclusively settled that such submission, followed by an actual trial and judgment, renders
 
 *492
 
 the judgment a finality, not subject to collateral attack, and not subject to direct attack in an error proceeding, unless the question was raised and the objection made in the trial court at or preceding the trial.
 

 Again, it is claimed that inferentially the Turney opinion has declared the judgement in that case to be null and void. Counsel has not pointed out the language in that opinion which so declares, but it will not be out of place to quote portions of the opinion which are clearly to the contrary:
 

 “Indeed, in analogous cases it is very clear that the slightest pecuniary interest of any officer, judicial or
 
 quasi
 
 judicial, in the resolving of the subject-matter which he was to decide,
 
 rendered thé decision voidable.”
 

 The question as to whether the judgment is void or voidable must be found in the last analysis to turn upon the further question whether the court had jurisdiction of the subject-matter, or whether the judge who presided was merely
 
 disqualified
 
 to hear and decide the case. We therefore quote further from the opinion:
 

 “He [Turney] moved for his dismissal [in the trial court] because of the
 
 disqualification
 
 of the Mayor to try him, under the Fourteenth Amendment. * *
 
 *
 

 “That court heard the case and reversed the judgment, on the ground that the Mayor was
 
 disqualified,
 
 as claimed. * * *
 

 “That officers acting in a judicial or
 
 quasi
 
 judicial capacity are
 
 disqualified
 
 by their interest in the controversy to be decided is, of course, the general rule. * * *
 

 
 *493
 
 “No matter what the evidence was against him, he had the right to have an
 
 impartial
 
 judge.”
 

 That the decision of the
 
 Turney case
 
 was not grounded upon lack of jurisdiction over the subject-matter, or upon any jurisdictional ground, we quote the following:
 

 11 Every procedure
 
 which would offer a possible temptation to the average man as a
 
 judge
 
 to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused, denies the latter due process of law.”
 

 It will therefore be seen that it is the procedure which was condemned. In discussing the amount of the tine in the
 
 Turney case,
 
 the court made this further observation:
 

 “With his interest, as mayor, in the financial condition of the village, and his responsibility therefor, might not a defendant with reason say that he feared he could not get a fair trial or a fair sentence from one who would have so strong a motive to help his village by conviction and a heavy fine ? ’ ’
 

 This language stresses the financial interest of the judge and his disqualification on that ground to give a fair trial or impose a fair sentence.
 

 Having refused to yield to the insistence of counsel that, by reason of alleged unconstitutional statutes, an unconstitutional court was created, the court really declared that it was the “operation of those statutes” which disqualified the person presiding over the court to render a valid judgment.
 

 This decision must turn in its last analysis upon
 
 *494
 
 the distinction to be made between a' void and a voidable judgment. If it was a void judgment, it is a mere nullity, which could be disregarded entirely, and could have been attacked collaterally, and the accused could have been discharged by any other court of competent jurisdiction in
 
 habeas <corpus
 
 proceedings. If it was voidable, it is not a mere nullity, but only liable to be avoided by a direct attack and the taking of proper steps to have its invalidity declared. Until annulled, it has all the ordinary consequences of a legal judgment.
 

 If the conviction of Turney was a nullity, it was not necessary to raise the objection of the disqualification of the mayor before the trial, or at any time, in the trial court. It could have been raised in the appellate court, or the conviction could have been attacked collaterally by
 
 habeas corpus
 
 proceeding. The objection was in fact made before trial, and the final decision is necessarily responsive to that fact. It does not follow that the conviction would have been reversed by the Supreme Court of the United States, if the objection had not been made in the trial court. The opinion states that the objection was
 
 seasonably raised,
 
 and we think that statement goes to the very heart of the decision, because, after a thorough examination of the authorities, we are convinced that the decision must have been otherwise if the objection had not been made until the case was docketed in the appellate courts.
 

 We are mindful that the reversal is based upon the lack of due process. But due process does not essentially differ in character from the several
 
 *495
 
 guaranties of the Bill of Rights. All are regarded as privileges which can be waived, and a failure to assert them at the earliest available opportunity amounts to a waiver. A recent federal decision,
 
 Dunn
 
 v.
 
 Fort Bend County
 
 (D. C.), 17 F., (2d) 329, at page 333, states:
 

 “There are other considerations, however, which make it more clear that plaintiffs present no equity whatever for relief. The first of these is that the invocation of the Fourteenth Amendment is a privilege ; * * • * and that this right to invoke the Fourteenth Amendment, being a personal privilege, may be lost by election, waiver, or estoppel. ’ ’
 

 In the case of
 
 Zachra
 
 v.
 
 Am. Mfg. Co.,
 
 179 Mo. App., 683, 162 S. W., 1077, it appears at pages 694 and 695 of the opinion (162 S. W., 1077), that application for a rehearing was made on the ground that, if the judgment of affirmance stands, appellant will be deprived of its property
 
 without due-process of law,
 
 in violation of the Constitution of Missouri and of the first section of the Fourteenth Amendment to the Constitution of the United States. In disposing of the motion, the court stated:
 

 “Our Supreme Court has held in very many cases that if parties desire to avail themselves of a constitutional right which has been denied, they must raise the question at the first opportunity.”
 

 The foregoing case is authority for the statement that due process of law does not differ from former jeopardy, the right of jury trial, and other guaranties of the Bill of Rights, in regard to whether the objection must be seasonably made.
 

 This conclusion could only be reached on the
 
 *496
 
 theory that the guaranty of due process is a privilege which must be claimed, and one of the foregoing cases so declares.
 

 * The principle must be the same without regard to the character of the constitutional guaranty, and the following cases therefore support the proposition that all constitutional guaranties, where personal privilege only is involved, may not only be waived, but will be deemed to have been waived, unless the objection is seasonably raised, and that even if the objection is made in the trial court,, the judgment is not void, and is therefore not subject to challenge otherwise than in an error proceeding.
 
 Magill
 
 v.
 
 Boatmen’s Bank,
 
 250 S. W., (Mo. Sup.), 41;
 
 Carr
 
 v.
 
 Buhme,
 
 167 Ind., 76, 78 N. E., 322, 10 Ann. Cas., 967;
 
 People ex rel. Harvey
 
 v.
 
 Vaughan,
 
 282 Ill., 163, 118 N. E., 479;
 
 High-tower
 
 v.
 
 Hollis,
 
 121 Ga., 159, 48 S. E., 969;
 
 Busse
 
 v.
 
 Barr,
 
 132 Iowa, 463, 109 N. W., 920;
 
 White
 
 v.
 
 State,
 
 23 Okl. Cr., 198, 214 P., 202;
 
 Hack
 
 v.
 
 State,
 
 141 Wis., 346, 124 N. W., 492, 45 L. R. A., (N. S.), 664;
 
 Lamar
 
 v.
 
 Prosser,
 
 121 Ga., 153, 48 S. E., 977;
 
 Ricks
 
 v.
 
 Gantt,
 
 35 La. Ann., 920;
 
 Meeks
 
 v.
 
 Guckenheimer,
 
 102 Ga., 710, 29 S. E., 486;
 
 State
 
 v.
 
 Bordelon,
 
 141 La., 611, 75 So., 429;
 
 Yazoo & Miss. Valley Rd. Co.
 
 v.
 
 Kirk,
 
 102 Miss., 41, 58 So., 710, 834, 42 L. R. A., (N. S.), 1172, Ann. Cas., 1914C, 968.
 

 Prom the foregoing authorities and by the overwhelming weight of all authority, it is clear that the sound rule is that matters of interest or bias, or prejudice of the judge, except where it amounts to actual fraud, are to be regarded as private matters, concerning only the .parties to an action, and not affecting public policy. Such matters affect
 
 *497
 
 only the qualification of the judge, and, if they affect the jurisdiction at all, they must relate only to the jurisdiction over the person, and not to the jurisdiction over the subject-matter of the action.
 

 By a like overwhelming authority, they are matters of privilege, and, whether they are guaranteed by a constitutional or statutory provision, or by some principle of the common law, the privilege is regarded as waived, unless claimed at the earliest available opportunity.
 

 While the
 
 Tumey case
 
 does not definitely declare that the objection must be seasonably made, the peculiar stress placed upon that feature is significant. If the Supreme Court had believed that feature to be unimportant or unessential, it would have been quite as easy to have made the unqualified declaration that the interest of the mayor rendered the judgment void.
 

 Other cases, clearly in the minority, hold that the disqualification of the judge renders the judgment void, and not voidable merely, but it will be found that nearly all of those cases are based upon a statute prohibiting any judge from acting officially where he has an interest in the outcome of the litigation. No purpose would be served by this court analyzing the minor views. This court, in a judgment concurred in by all of the judges, held, in the case of
 
 State ex rel. Warner
 
 v.
 
 Baer,
 
 103 Ohio St., 585, 134 N. E., 786, that the constitutional right of jury trial could be waived. This court is therefore committed to the doctrine that a constitutional privilege is waived by not asserting it in the trial court.
 

 If the disqualification of a judge by reason of
 
 *498
 
 interest should be held in every instance to destroy the jurisdiction of the court, and to render the judgment null and void, the finality of judgments would be seriously jeopardized. The party whose interests are adversely affected would in every instance decline to raise the objection and seek to prevail on the merits of the case, and, if unsuccessful, enjoin the execution of the judgment in a collateral proceeding. A judgment which is absolutely null and void for want of jurisdiction of the court to render it is not binding upon either party. Estoppel would not apply. A plaintiff after defeat could immediately institute another action, and former adjudication could not be pleaded.
 

 The question of real difficulty and the one upon which counsel and the members of the court are divided is whether the court had jurisdiction of the subject-matter, and whether the judgment has any validity whatever, even though the question of interest was not made in the trial court. It is our duty in deciding the instant case to declare a rule of law which will govern not only prosecutions in liquor cases, but all other cases, civil and' criminal, in which the interest of the judge is involved. To adopt the views of counsel for the accused in this and other related cases would result in hopeless confusion. Inasmuch as the question of interest of the judge has become a federal question, any federal district court could entertain jurisdiction of any collateral proceeding attacking a judgment of a state court, if criminal, by the writ of
 
 habeas corpus,
 
 and, if civil, by the process of injunction, and take evidence upon the issue of the kind, quality, character, and extent
 
 *499
 
 of the interest of the judge by whom the judgment was entered, and determine the ¡merits of each individual case. It is idle to say that such cases would be uniformly decided according to well-defined rules. The Supreme Court has said that the disqualification only exists if the interest is substantial, and the extent of the interest as influencing the decision of the judge must necessarily be a question of fact, to be determined partly by the character of the evidence and partly by the individual notions of the judges of the different districts.
 

 The district court of Kentucky, in the case of
 
 Ex parte Baer,
 
 20 F., (2d) 912, decided May 23, 1927, released on
 
 habeas corpus
 
 a person who had been convicted on a liquor charge, and where no question of interest of the judge was raised in the trial court. Frankly we are wholly unable to follow his reasoning. If the federal district courts follow this course all over the United States, the finality of judgments will have become only a memory, and the “vanishing rights of the states” a completed process.
 

 It follows that the judgment of the Court of Appeals affirming the court of common pleas and the justice of the peace must be affirmed.
 

 Judgment
 
 affirmed.
 

 Dat, Allen and Matthias, JJ., concur.