IN RE ADOPTION OF REAMS.

(No. 89AP-169—Decided
December 7, 1989.)

*James Kura,* county public defender, and *Paul Skendelas,* for guardian ad litem David Strait.

*Andrea Yagoda,* for appellant Richard W. Reams.

YOUNG, J. This matter is before this court upon the appeal of Richard Reams from an order of the Franklin County Court of Common Pleas, Probate Division, dismissing his petition for the adoption of Tessa Annaleah Reams. In 1982, Richard Reams and Beverly Reams (n.k.a. Seymour), a childless couple, arranged for Norma Lee Stotski to become the surrogate mother of Mr. Reams' child. There was no written contract and all the terms of the agreement between the parties were made orally. When conception with Mr. Reams' sperm failed, Mrs. Stotski began inseminating sperm that she obtained from Leslie Miner. Mrs. Stotski gave birth to Tessa Annaleah Reams on January 12, 1985. Mrs. Stotski gave the baby to the Reamses in exchange for $10,000 and other expenses pursuant to their oral agreement.

In March 1985, Mrs. Stotski filed a parentage action against Mr. Reams in the Franklin County Court of Common Pleas, Division of Domestic Relations, since Mrs. Stotski thought this was necessary so that Mrs. Reams could eventually adopt Tessa. Neither Joseph Stotski nor Leslie Miner, required to be joined, were included in this action. See R.C. 3111.07(A). Mr. Reams acknowledged paternity and was granted custody of Tessa pursuant to a court order filed August 1, 1986.

The Reamses began to experience marital difficulties and eventually separated. Mr. Reams filed a divorce action in Delaware County whereas

Mrs. Reams filed a divorce action in Pickaway County. The Delaware County action was dismissed, and the Pickaway County divorce action proceeded. In June 1987, Mrs. Reams removed Tessa from Mr. Reams' home and a Pickaway County court ordered Mrs. Reams to return the child to the custody of Mr. Reams, thereby enforcing the Franklin County "Parentage and Custody Order" filed August 1, 1986. Subsequently, Mrs. Reams filed a Civ. R. 60(B) motion to vacate the previous Franklin County parentage and custody order and alleged that Mr. Reams was not Tessa's biological father.

The previous parentage determination was vacated and all necessary parties, Joseph Stotski, Leslie Miner, and Richard Reams were joined in a parentage action. See R.C. 3111.07(A). The result of the HLA blood testing demonstrated that Leslie Miner was the child's biological father.

Also currently pending in the Franklin County Court of Common Pleas, Division of Domestic Relations, is a case filed by Mrs. Reams seeking to obtain custody of Tessa Reams.[1] Tessa was made a ward of the court on March 17, 1988, and Mr. Reams was granted temporary, physical custody of Tessa.

On October 13, 1988, Richard Reams filed a petition for the adoption of Tessa Annaleah Reams in the Probate Division of the Franklin County Court of Common Pleas. Beverly Reams (Seymour) also filed a petition for the adoption of Tessa on November 16, 1988. Leslie Miner, the biological father, and Mrs. Stotski, the biological mother, executed consent agreements authorizing the adoption of Tessa.[2] On December 20, 1988, the probate court issued the following order:

"* * * THEREFORE, IT IS HEREBY ORDERED that each petitioner, who wishes to have his Petition heard before the Court, shall post an additional cost deposit of $3,000.00 on or before January 3, 1989. This matter has been set for hearing on January 25, 1989 at 2:00 P.M. where the issue of consent will be heard."

Thereafter, appellant filed a motion to reconsider/vacate the order requiring the additional deposit. Appellant, in the affidavits attached to the motions, stated that he was financially unable to post the $3,000 deposit. The trial court overruled the motion and dismissed the petition. After the trial court had rendered its decision, appellant's counsel asked the trial judge to recuse himself based upon remarks that the judge had made during the proceeding. The trial court overruled this motion on the basis that it was not timely made. Appellant now asserts the following two assignments of error:

"The trial court abused its discretion, acted beyond its authority and denied appellant substantial rights guaranteed by the United States and Ohio Constitutions.

"The trial judge abused its [sic] discretion in refusing to recuse himself prior to journalizing his decision to dismiss the petition for adoption filed by appellant."

In his first assignment of error, appellant asserts that the trial court abused its discretion when it dismissed the appellant's petition for adoption because petitioner had not deposited the $3,000 required by the court's December 20, 1988 order and also

---

[1] *Beverly Reams* v. *Richard W. Reams,* C.P. No. 87JU-09-6347; also pending is the dependency action filed on behalf of the child by the guardian ad litem in *In the Matter of Tessa Reams,* C.P. No. 89JU-02-1215.

[2] Miner's consent form bears only his signature; all other information requested on the form was left blank. Mrs. Stotski's consent form states that she consents only to the adoption of Tessa by Richard Reams.

because appellant had failed to file a custodial affidavit. The probate court's entry of January 27, 1989 states as follows:

"This matter came on for hearing on January 25, 1989 to consider the Petition for Adoption filed by Richard W. Reams, Case No. 388,326 and the Petition of Beverly Seymour to adopt Tessa Annaleah Reams, Case No. 388,976. Since no party has deposited the required $3,000.00 ordered by the Court in an Entry filed December 20, 1988, to defray the expenses of appointing a Guardian ad litem for the child in this action, IT IS ORDERED that the Petitions of both petitioners herein be dismissed without prejudice. Further, because of the absence of a Custodial Affidavit, this Court cannot assume subject matter jurisdiction of this case. Until and unless these statutory affidavits have been filed, no further proceeding can take place.

"IT IS FURTHER ORDERED that this matter is hereby certified to the Juvenile Division for further proceedings as the disposition of the custody and control of said minor."

On appeal, this court now considers only that portion of the probate court's judgment entry which affects the disposition of case No. 388,326, Mr. Reams' petition for adoption. Loc. R. 44.1 of the probate court provides:

*"Unless otherwise ordered by the court,* a fee of ten dollars ($10.00) shall be taxed as costs for each *guardian ad litem appointed."* (Emphasis added in part.)

Appellant argues that the only interpretation of this rule is that the $10 fee shall be either deposited or waived by order of the probate court. However, this court interprets Loc. R. 44.1 as conferring discretion upon the probate court not only to waive the $10 fee, but to increase it in appropriate circumstances.

The facts before this court present a unique set of circumstances. The trial court astutely provided for the best interest of the child by requiring that a guardian ad litem be appointed to protect the interests of the minor child, Tessa Reams. However, there is no indication in the record that a guardian ad litem was ever appointed. When considering the adversarial posture of the proceedings, it was paramount that a guardian ad litem be appointed to protect the minor child's best interest and an increase of the $10 filing fee to defray the expenses of appointing a guardian ad litem was not unreasonable given the unusual circumstances of this case. However, the amount of the fee increase must bear a reasonable relationship to the anticipated costs of appointing a guardian ad litem and any unused funds deposited to defray the costs of a guardian ad litem must be returned to the appellant upon conclusion of this matter.

Appellant asserts that the trial court denied him due process, equal protection and access to the court when it dismissed his adoption petition subsequent to his filing an affidavit with the probate court indicating that he was financially unable to post the $3,000 fee for the guardian ad litem's expenses. Appellant cites *Boddie* v. *Connecticut* (1971), 401 U.S. 371, to support his position that he has been denied due process. *Boddie* was a class action involving female welfare recipients who were prevented from obtaining divorces because they were unable to post the required filing fee due to their indigent status. In *Boddie,* the United States Supreme Court held that the members of this class were being denied their opportunity to be heard upon their claimed right to a divorce, and were being denied their fundamental right to remarry. *Id.* Under the circumstances in *Boddie,* the parties desired to extinguish a

legal obligation, a marriage. This could not be done without state approval. The parties could not dissolve their marriages and be free to remarry without judicial interference by the state. Because of *Boddie,* it is now the case in domestic court that a person must file an inability affidavit and, upon approval of the court, may have the filing fees waived. See Loc. R. 2 of Domestic Relations Division.

In the case *sub judice,* the petitioner, unlike the plaintiffs in *Boddie,* is not an indigent person. Also, it is important to note that *Boddie* is not applicable to the facts at bar since the holding in *Boddie* is narrowly limited to the facts of that particular case. The *Boddie* majority stated:

"* * * [W]e wish to re-emphasize that we go no further than necessary to dispose of the case before us, a case where the *bona fides* of both appellants' indigency and desire for divorce are here beyond dispute. *We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment* so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship. * * *" (Emphasis added in part.) *Id.* at 382-383.

In the instant case, the appellant is petitioning to establish, not terminate, a parent-child legal relationship. Since this area of the law has no precedents, there is no basis to assume that Mr. Reams acquired any legal parental rights regarding his long-time status as a foster parent. Since the appellant is not the biological father of the child and is not now named the legal adoptive parent, he is not being denied any of his fundamental rights by the probate court's dismissing his petition for adoption upon the bases that he has failed to deposit the $3,000 fee and file a custodial affidavit. Furthermore, there is no provision in the local probate rules which mandates waiver of the filing fee on the basis of a petitioner filing an inability affidavit.

It is important to reiterate that there is nothing in the record which substantiates that a guardian ad litem was actually appointed. Loc. R. 44.1 provides that a $10 fee shall be taxed as costs for each guardian ad litem appointed. Without the actual appointment of a guardian ad litem, the need for a $10 fee, let alone an increase in the filing fee, had not as yet been manifested. Although the trial court may not have violated any of appellant's fundamental rights by refusing to proceed without the filing of the $3,000 court-ordered fee, the trial court had no authority to assess *any* fee without first appointing a guardian ad litem. See Loc. R. 44.1.

It has been established in the case at bar that Tessa Reams has a biological mother, Norma Lee Stotski, and a biological father, Leslie Miner. In most circumstances, it is the biological parents that have the paramount legal right to the child and are ultimately responsible for the financial, physical, and emotional care of a child. As applied to the facts at bar, regardless of who may have physical custody of the child, the natural parent(s)' rights are paramount until such time that both parents are separately proven to be unfit, or the parent(s) comply with requirements of a valid adoption proceeding. See *In re Perales* (1977), 52 Ohio St. 2d 89, 6 O.O. 3d 293, 369 N.E. 2d 1047.

The ultimate consideration in the facts before this court is the best interest of Tessa Annaleah Reams. It seems only logical that in order for this matter ever to be resolved, the probate court must first establish the legal

parentage of Tessa Annaleah Reams. Legal parentage, not to be confused with biological parentage, must be established before the issue of custody can properly be decided and is germane in this case to determine the proper parties required to give consent in an adoption proceeding.

Appellant asserts that he has the consent of the biological parents and that the matter should proceed. The record indicates that the biological father, Leslie Miner, signed his name to a consent form. The consent form gives no clue as to what Mr. Miner consented to and the form was not properly executed or notarized. Likewise, the consent form signed by the biological mother, Norma Lee Stotski, is defective since it was not properly notarized. Thus, it is not legally valid and indicates that Norma Stotski consents only to the approval of the adoption of her daughter by Richard W. Reams. The issue of consent and the matter of legal parentage is further complicated when considering R.C. 3111.37, which states:

"(A) If a married woman is the subject of a non-spousal artificial insemination and if her husband consented to the artificial insemination, the husband shall be treated in law and regarded as the natural father of a child conceived as a result of the artificial insemination, and a child so conceived shall be treated in law and regarded as the natural child of the husband. A presumption that arises under division (A)(1) or (2) of section 3111.03 of the Revised Code is conclusive with respect to this father and child relationship, and no action under sections 3111.01 to 3111.19 of the Revised Code shall affect the relationship.

"(B) If a woman is the subject of a non-spousal artificial insemination, the donor shall not be treated in law or regarded as the natural father of a child conceived as a result of artificial insemination, and a child so conceived shall not be treated in law or regarded as the natural child of the donor. No action under sections 3111.01 to 3111.19 of the Revised Code shall affect these consequences."

As applied to the facts of this case, R.C. 3111.37 indicates that since Norma Stotski testified that she was artificially inseminated, that Mr. Stotski, by virtue of the fact that he is married to Norma Lee Stotski, shall be treated in law and regarded as the natural parent of Tessa Reams. Thus, it is Mr. Stotski's consent, in addition to Mrs. Stotski's consent and not Leslie Miner's, that is required to effectuate an adoption of Tessa Reams. The effect of R.C. 3111.37 would supersede the paternity suit which found that Leslie Miner was the biological father and declare Joseph Stotski as the legal parent of Tessa Reams. This statute would also establish in Mr. Stotski all legal parental rights and the responsibility to financially support the child.

Appellant also takes issue with the fact that the probate court dismissed his petition for adoption on the basis that he failed to file a custodial affidavit. The trial court indicated in its January 27, 1989 judgment entry that by the petitioner's failing to file the required custodial affidavit, the probate court was not vested with subject matter jurisdiction and no further proceedings could be undertaken until the custodial affidavits were filed.

The circumstances before this court present the unusual case of an adversarial adoption proceeding. There is evidence in the record which indicates that there are separate proceedings grounded in custody and dependency which are currently pending before the Franklin County Court of Common Pleas, Juvenile Division. The record is unclear as to whether those proceedings have been stayed

pending the disposition of the case herein. Appellant argues that a custodial affidavit is not required in an adoption proceeding and cites R.C. 3109.27 to support his position. R.C. 3109.27 states:

"(A) *Every party in a custody proceeding,* in his first pleading or in an affidavit attached to that pleading, shall give information under oath as to the child's present address, the places where the child has lived within the last five years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall also include all of the following information:

"(1) Whether the party has participated as a party, witness, or in any other capacity in any other litigation concerning the custody of the same child in this or any other state;

"(2) Whether the party has information of any custody proceeding concerning the child pending in a court of this or any other state;

"(3) Whether the party knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child.

"(B) If the declaration under division (A)(1), (2) or (3) of this section is in the affirmative, the court may require the declarant to give additional information under oath. The court may examine the parties under oath as to details of the information furnished and as to other matters pertinent to the court's jurisdiction and the disposition of the case.

"(C) Each party has a continuing duty to inform the court of any custody proceeding concerning the child in this or any other state of which he obtained information during this proceeding." (Emphasis added.)

There is no requirement set forth in R.C. 3107.05 that a custodial affidavit be filed in conjunction with a petition for adoption. Furthermore, appellant asserts that a petition for adoption is not a "custody proceeding" pursuant to R.C. 3109.27 and, therefore, a custodial affidavit was not required. R.C. 3109.21(C) defines a "custody proceeding" as "* * * proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings." A custody determination means a court decision and court orders and instructions providing for the custody of a child, including visitation rights. R.C. 3109.21(B). R.C. 2151.23(A) provides in pertinent part:

"The juvenile court has exclusive original jurisdiction under the Revised Code:

"* * *

"(2) To determine the custody of any child not a ward of another court of this state[.]"

This code section necessarily implies that the juvenile court has exclusive original jurisdiction to determine the custody of a child deemed to be a ward of the Franklin County Juvenile Court. The record before this court indicates that Tessa Reams has been adjudicated a ward of the court and, thus, the Franklin County Juvenile Court has exclusive original jurisdiction to determine her custody placement.

An adoption proceeding relieves the biological, or other legal parents of the adopted person, of all parental rights and responsibilities and creates the relationship of parent and child between the petitioner and the adopted person. R.C. 3107.15. The adoption process is a proceeding normally dispositive of a proceeding for custody. Although it is the understanding of the parties in a routine adoption proceeding of a non-adversarial nature

that the adoption necessarily encompasses custody, there is no statutory basis for this assumption. Adoption terminates one legal relationship while simultaneously establishing another. Adoption merely establishes the legal relationship of parent and child for all purposes, including inheritance and applicability of statutes, documents and instruments, and establishes who is ultimately responsible for the financial, physical and emotional care of the adopted person, irrespective of actual physical custody. "Adoption," as defined by R.C. 3109.21(C), is not a custody proceeding and may only become one at such time that a guardian, as opposed to a guardian ad litem, is appointed to protect the child's best interest. Thus, it is possible for a person to be a legally adoptive parent and not have actual physical and/or legal custody of the adopted person.

Accordingly, on the facts before this court, there was no basis in law upon which the trial court could dismiss appellant's petition for adoption because the petitioner had failed to file a custodial affidavit. Legal custody of Tessa Reams is held by the Franklin County Juvenile Court subject to the parents' paramount rights as set forth in *Perales, supra.* However, the issue of custody, as a practical matter, cannot be addressed since it has not yet been determined what party or parties possess the paramount parental rights. Furthermore, even though Norma Stotski and Leslie Miner executed consent forms which they thought to be valid, neither could relinquish their legal custody of Tessa to Mr. Reams through the adoption process since the legal custody of Tessa Reams is now being held by the Franklin County Juvenile Court. Case law states that the juvenile court is divested of only its jurisdiction to decide a custody matter until such time that the probate court appoints a guardian and acquires the right to determine all matters touching guardianship, including custody and visitation. See *In re Zahoransky* (1985), 22 Ohio App. 3d 75, 22 OBR 173, 488 N.E. 2d 944. Neither a guardian nor a guardian ad litem, for that matter, had been yet appointed for the minor child, Tessa Reams.

When considering the various actions that have been filed by these parties which are pending in juvenile court, it is certainly understandable as to why the probate court wanted before it the information which could be found in a custodial affidavit. However, the trial court had no basis in law upon which to dismiss appellant's petition for adoption for his failure to file a custodial affidavit.

Accordingly, the probate court prematurely dismissed the appellant's petition for adoption on the basis that a custodial affidavit had not been filed, since the case was merely an adoption matter and the issue of custody had not yet been manifested. Based on the foregoing, appellant's first assignment of error is overruled in part, and sustained in part.

In his second assignment of error, appellant asserts that the trial judge abused its discretion in refusing to recuse himself prior to journalizing his decision to dismiss appellant's petition for adoption. The record clearly demonstrates that appellant's counsel did not ask the trial judge to recuse himself until after he rendered his decision, although the record indicates that appellant's counsel was well aware of certain facts prior to the probate court's decision, and discussed these facts on the record stating that she did not think the trial judge could be fair and impartial in dealing with this matter. Thus, the request for recusal was not made at the earliest opportunity and appellant's objection is deemed waived. *Tari* v. *State* (1927), 117 Ohio St. 481, 159 N.E. 594, 57 A.L.R. 284.

The Code of Judicial Conduct, Canon 3(C)(1)(a) states:

"A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

"(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]"

Thus, a judge is under an obligation to disqualify himself in a proceeding in which his impartiality might reasonably be questioned and, also, in situations where the judge harbors a personal bias or prejudice concerning a party. However, this is a matter which is peculiarly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes a personal bias or prejudice towards a party. Given this court's final disposition of the matter herein, appellant will be able to renew his request for recusal at such time that the case is remanded. Consequently, appellant's second assignment of error is not well-taken and is overruled.

Accordingly, appellant's first assignment of error is overruled in part, and sustained in part; appellant's second assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas, Probate Division, is reversed and the cause is remanded for further proceedings consistent with law and this opinion.

*Judgment reversed and cause remanded.*

STRAUSBAUGH and BOWMAN, JJ., concur.