**SEYMOUR, Appellant,**

v.

**STOTSKI, Appellee.**

[Cite as *Seymour v. Stotski* (1992), 82 Ohio App.3d 87.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1336.

Decided Aug. 18, 1992.

*Beverly Seymour, pro se.*

*Patricia L. Grimm,* for appellee.

DESHLER, Judge.

Plaintiff-appellant, Beverly Seymour, f.k.a. Beverly Reams, appeals the judgment of the trial court's decision of October 29, 1991, dismissing her complaint. The trial court dismissed her parentage action concerning the minor child Tessa Reams ("Tessa").

The saga precipitating the case *sub judice* began in 1982. At that time, Richard Reams and Beverly Seymour, a childless couple, arranged for Norma Stotski to become the surrogate mother of Reams' child. There was no written contract and all the terms of the agreement between the parties were made orally. The effort to achieve conception with the use of Reams' sperm failed. However, Stotski, on January 12, 1985, gave birth to Tessa Annaleah Reams. The conception giving rise to the birth of this child resulted from the use of the sperm of one Leslie Minor. Stotski gave the baby to the Reamses in exchange for $10,000 and other expenses pursuant to their oral agreement.

In March 1985, Stotski filed a parentage action against Reams in the Franklin County Court of Common Pleas, Division of Domestic Relations. Stotski thought this was necessary so that Reams could eventually adopt Tessa. Neither Joseph Stotski (Norma Lee Stotski's husband) nor Leslie Minor was included in this action. Reams acknowledged paternity and was granted custody of Tessa pursuant to a court order filed August 1, 1986. The Reamses began to experience marital difficulties and eventually separated. Subsequently, a divorce action proceeded in Pickaway County. In June 1987, Seymour removed Tessa from Reams' home. Later, a Pickaway County court ordered Seymour to return the child to the custody of Reams, thereby enforcing the Franklin County "Parentage and Custody Order" filed August 1, 1986. Subsequently, Seymour filed a Civ.R. 60(B) motion to vacate the previous Franklin County parentage and custody order and alleged that Reams was not Tessa's biological father. The previous parentage determination was vacated and all necessary parties, Joseph Stotski, Leslie Minor, and Richard Reams, were joined in the parentage action. The result of the HLA blood testing demonstrated that Leslie Minor was the child's biological father.

In October 1988, Reams filed a petition for adoption in the Franklin County Court of Common Pleas, Probate Division. Seymour also filed a petition for the adoption of Tessa in November 1988. After the probate court issued an order requiring each petitioner to post an additional court-costs deposit of $3,000, Reams filed an appeal to this court. A short time later, on December 7, 1989, this court rendered an opinion in *In re Adoption of Reams* (1989), 52 Ohio App.3d 52, 557 N.E.2d 159. Therein, this court reversed and remanded the matter to the probate court for a determination of the legal parentage of

Tessa. Upon remand, the case was dismissed by the probate court, *sua sponte*, on September 18, 1990, due to the death of Reams.

On August 15, 1991, this court was again called upon to render an opinion in *Reams v. Reams* (Aug. 15, 1991), Franklin App. No. 90AP–1137, unreported, 1991 WL 160052. Therein, this court found the issues of custody to be moot.

Prior to this decision, on June 3, 1991, Seymour had filed a parentage action, pursuant to R.C. 3111.17, with the Domestic Relations Court of Franklin County. However, the trial court dismissed her parentage action, finding it to be moot. The errors now assigned by appellant are as follows:

"1. The trial judge should ethically have recused himself from deciding this case and denied appellant due process of law by violating Canons 2, 3 of the Ohio Code of Judicial Conduct in regard to his past treatment of and comments pertaining to appellant.

"2. There has never been an adjudication of who is Tessa's legal 'mother.' Nowhere is there a legal debate recorded as to who is Tessa's mother. This claim seeks to resolve that unaddressed question, and denying a hearing violates appellant's due process rights.

"3. Legal parental rights are not automatically relinquished by incarcerated mothers in Ohio, and parental rights only become moot when the parent cannot make appropriate arrangements for her children. State law mandates a reunification plan with the mother, *before* any other plan, not after. Legal parentage should be decided before 'custody' is moot.

"4. The previous cases cited were conducted by Judge Solove with extensive violation of civil rights to appellant and those arguments and their validity should be re-examined, due to acts and omissions of defense counsel for appellant.

"5. Even if 'custody' is an issue, keeping a mother's right to custody by an incarcerated mother is legally feasible and assignment of physical custody to trusted family members a regular occurrence.

"6. The judge erred in suggesting it would not be in the child's best interests to hear this case. Since he readily admits Seymour was not a party to neglect/dependency/custody proceedings, appellant contends Tessa's best interests could not possibly have been fully considered without attention to the mother/child relationship for five years, seven months, resulting· in the healthy, well-adjusted child she was determined to be when seized by Children Services. *'Best interests'* for a female child include a clarification of her own legal status, and conditions under which her society may some day steal her own lovingly mothered child.

"7.   The lower court erred in considering the 'best interests of the child' in making a custodial decision with no consideration of or expert testimony on the importance of the mother/child bond that existed for five years, seven months of Tessa's life between her and Beverly Seymour.

"8.   The lower court failed to recognize the freedom of two adult women to choose surrogacy as a free reproductive choice for them both, protected by the U.S. Constitution; Seymour is Tessa's 'mother' because the two women chose this, and Seymour fulfilled every obligation as a 'mother' to birth substitute, child and society.

"9.   Seymour has been denied recognized maternal parentage by the acts, delays, and denials of her free access to the court, and as 'punishment' for freely exercising her civil liberties."   (Emphasis *sic*.)

Appellant has filed what is entitled an "Exhibit" on February 6, 1992.   In this exhibit, appellant has filed Assignments of Error Nos. 5 through 21, which we will address as Assignments of Error Nos. 10 through 26.

"10.   Appellant in this case was denied due process of law by the state of Ohio in that she was not able to attend the hearing on seizure of her child Tessa by children services due to the fact this state permits a wide range of excessive bails to be set in local courts, bails which discriminate especially against women who defend themselves against men.   The wide discrepancies and leeway in bail setting can also be used to prevent helpless citizens from protecting their rights in just such actions, and in preparing their defense.   By failing to provide fair and equitable bail guidelines, the state itself permits violation of Amendments 8 and 14 to the U.S. Constitution.

"11.   The lower court erred in denying appellant the civil liberty of speaking publicly about her case, thus preventing her from exercising an American freedom to seek redress for government error by public examination and attention to a grievance.   The U.S. Constitution does not mandate or require a citizen to confine her efforts to correct a wrong to only those procedures for redress set up by a particular branch of the government, legislative, executive, or judicial.

"12.   Appellant was prejudiced by the references to the surrogate arrangement in this case as being 'illegal' when in fact there is no Ohio law which disallows one woman to act as the birth surrogate for another and this *'reproductive choice'* is protected by the Constitution of the United States of America.

"13.   Appellant was denied her basic right to free speech, and actually punished for daring to speak out freely as an American citizen, by being denied custody.

"14. The lower court erred in the process used to declare the child Tessa a 'neglected/dependent' child and thereby violated the constitutional rights of the parents of Tessa to due process.

"15. Appellant was denied due process of law through the ineffective assistance of counsel in the acts and omissions of her counsel, Francine Jacobs.

"16. The lower court erred in determining that, because appellant is incarcerated, issues of custody are 'moot.'

"17. The lower court erred in modifying its own former custody decision, making Richard Reams and Beverly Seymour the child's custodians and parental figures, when it was totally unnecessary, not proven to be in her best interests, to award the child to children services.

"18. The lower court erred in modifying his own previous order granting custody, care, physical custody, and visitation to Beverly Seymour and Richard Reams, which effectively recognized Tessa as a member of both the Reams and Seymour families. Such modification and assignment of the child to Franklin County Children Services and the subsequent complete elimination of Tessa's identity as a Seymour family member was unjustified, unnecessary, and unwarranted.

"19. The lower court erred in awarding custody of the child Tessa without requiring an examination and report of the qualifications of Children Services so that the child's best interests in *each* of *the litigants' custody could properly be compared. A report on the desirability of custodial candidates was made except for Children Services.*

*"The participants in the custody hearing were denied due process because the fourth litigant, Franklin County Children Services, was permitted to do the 'home studies' of those [with] whom they were adversaries in the custody hearing. As a litigant, it is improper for them to be the evaluators of other contestants.*

"20. The lower court erred in ordering psychological reports that had been performed to be considered as part of the evidence in the first custody hearing between Reams and Seymour (90AP–1137) and in failing to require testimony concerning what 'anger' he thought he saw in appellant, its source, direction, and whether or not it was indeed justified, a result of being a battered woman, or a sign of depression and exhaustion from 3½ years of pressure, coercion, and stress in the litigation process itself.

"21. The lower court erred in not taking into consideration a professional evaluation and realistic look at evidence presented concerning the mental and psychological health of the custody candidates.

"22. The lower court erred in basing a custody decision upon the display of appellant's 'unlikable' responses to stress without requiring psychological testimony pertaining to the effects of a battering relationship and the frustration of legal system reinforcement of male coercion against a female spouse.

"23. The lower court erred in not applying the primary caregiver doctrine to this case.

"24. The lower court erred in considering the 'best interests of the child' in making a custodial decision with no consideration of or expert testimony on the importance of the mother/child bond that existed for five years, seven months of Tessa's life between her and Beverly Seymour.

"25. Beverly Seymour contends she was denied due process of law by the actions of this court in encouraging and abetting procedures which denied her access and input to the court records, by attitudes which were prejudicial to her as a person of conservative, 'straight,' Christian-oriented 'country' type culture, and by a courtroom attitude and decorum which favored Mr. Reams' lies, fraud, deceit, abuse, failure to meet her agreement in the surrogacy contract, dirty tricks, and weak, homosexual orientation.

"26. The lower court erred in taking custody of Tessa, and authority over her, from Mrs. Stotski, who had legally *already relinquished* her rights to the child. She had no right to consent or admit or deny anything pertaining to Tessa." (Emphasis *sic.*)

We now examine all of appellant's assigned errors.

In Assignment of Error No. 1, appellant contends the trial judge should have recused himself. However, we find no merit in this contention. If appellant truly believed she would be prejudiced by Judge Solove's hearing her parentage complaint, she should have followed R.C. 2701.03 by filing an affidavit of prejudice. By its terms, R.C. 2701.03 requires that a party file, with the Supreme Court of Ohio, an affidavit of prejudice not less than three days prior to the time of a hearing before a common pleas court judge. Since appellant did not comply with R.C. 2701.03, we overrule her first assignment of error.

In Assignments of Error Nos. 2, 3, 6, 8, and 12, appellant argues that the trial court should not have dismissed her parentage action and should have declared her to be Tessa's mother. Appellant does not dispute that she is not Tessa's biological mother; however, she maintains that her agreement with Stotski gives her the status of Tessa's mother and, thus, the right to be declared as such through a parentage action.

In collectively addressing these assigned errors, we initially find the trial court properly dismissed appellant's complaint, but it did so for the wrong

reason. The trial court stated it was dismissing appellant's complaint because:

"* * * This Court has determined that it is in the best interests of the child to be removed from all the parties involved in the preceding cases. It would therefore be in the best interests of Tessa Reams that the parentage action of Beverly Seymour be dismissed as moot."

It was not because the parentage action was "moot" that the trial court was obliged to dismiss appellant's complaint; rather, it was because appellant lacked standing to prosecute her claim. She was without standing because she is admittedly not the biological mother of Tessa, nor was she ever determined to be Tessa's legal mother by means of the so-called "surrogate agreement." The policy on such "surrogate agreements," when considering Ohio's adoption laws, is unsettled and open to considerable scrutiny as far as enforceability. See R.C. 3107.10. Additionally, it has been previously determined that appellant had no legal relationship to the child. In Ohio, one cannot claim the status of an adoptive parent merely through an oral agreement. Thus, appellant was in no position to bring a parentage action or claim motherhood of Tessa. Accordingly, we overrule these assigned errors.

In Assignments of Error Nos. 4, 5, 7, 9, 10, and 13 through 26, appellant contends that her counsel was ineffective, and the trial court erred in other cases in which she was involved. What appellant fails to consider is that previous cases are not on appeal, and these claims of error in another case are not before us in the case *sub judice*. Moreover, we have already determined that issues related to custody are moot. *Reams v. Reams* (Aug. 15, 1991), Franklin App. No. 90AP–1137, unreported, 1991 WL 160052. Accordingly, we overrule these assigned errors. We do agree with appellant's contentions that her right to speak freely regarding her past litigation cannot be abridged by the trial court. However, we cannot conclude that the conduct or attitude of the trial court in this regard was critical to the decisional background in this case and, as such, clearly does not merit reversal of the trial court.

In sum, we overrule all of appellant's assignments of error. The dismissal of appellant's complaint by the trial court is affirmed.

*Judgment affirmed.*

JOHN C. YOUNG, P.J., and PEGGY BRYANT, J., concur.