## In re ADOPTION OF KUHLMANN.

[Cite as *In re Adoption of Kuhlmann* (1994), 99 Ohio App.3d 44.]

Court of Appeals of Ohio,
Hamilton County.

No. C–930688.

Decided Dec. 7, 1994.

*Timothy J. Deardorff,* for appellant Cathy Kuhlmann.

*Stephen Cohen,* for appellee Denise L. Sparks.

*Per Curiam.*

Petitioners-appellants Cathy and Christopher Kuhlmann ("the Kuhlmanns") appeal from the judgment of the Probate Division of the Hamilton County Court of Common Pleas overruling their objections to the referee's report and dismissing their petition for adoption without the consent of the child's mother, Denise Sparks. The referee found that Denise Sparks's failure to support her child during a statutorily prescribed one-year period prior to the filing of a petition for adoption was justified, and thus the adoption could not proceed without consent. In a single assignment of error, the Kuhlmanns allege that the court's adoption of the finding that the failure to support was justified was against the manifest weight of the evidence. For the reasons which follow, we agree.

In December 1990, Denise Sparks, having just been released from prison, and temporarily residing at a Salvation Army shelter, gave each of her three children to a different friend for care and safekeeping. She claimed that she would take the children back after she got her life together.

Denise Sparks gave her then two-and-one-half-year-old son, Taylor, to Cathy Kuhlmann. In a handwritten note, dated December 5, 1990, Denise Sparks declared:

"To whom it may concern.

"I, Denise L. Sparks, give Cathy Kuhlmann my permission to have temporary custody of my son Taylor Johnson Sparks until further notice."

On January 24, 1991, the juvenile court, pursuant to R.C. Chapter 2151, with Denise Sparks and Cathy Kuhlmann present and by agreement of the parties, granted Cathy Kuhlmann temporary custody of Taylor. The court order does not mention support.

At a later proceeding, which is not memorialized in this record, Denise Sparks testified that an order of support was entered against John Sparks, Taylor's natural father.[1] John Sparks was then incarcerated in a state correctional facility. Denise Sparks was present at this proceeding.

In the intervening one-and-one-half-year period, Denise Sparks was employed in a variety of jobs, both full-time and temporary. She also received general assistance and food stamps, and lived with her mother in a rent-subsidized apartment in the English Woods development. She began to save some money.

During this period, Denise Sparks had only two visits with Taylor. It is uncontroverted that she did not provide monetary support to Taylor or to the Kuhlmanns for the care of Taylor. Cathy Kuhlmann claims that on several occasions she requested assistance in supporting Taylor from Denise Sparks. Denise Sparks, however, now asserts, after first denying, the existence of a mutual agreement by which she was to conserve her resources so that she could get back on her feet.[2]

Over the period, a bond developed between Taylor and the Kuhlmanns. He called the Kuhlmanns "mom" and "dad." The caseworker assigned to review the adoption found that "Taylor has become an integral part of Mr. and Mrs. Kuhlmann's life," and had "no hesitation in recommending the Kuhlmanns as excellent adoptive parents for Taylor."

---

1. It is undisputed that the Kuhlmanns demonstrated by clear and convincing evidence that Taylor's biological father, John Sparks, had failed to communicate with and had failed to support Taylor for the requisite one-year period prior to the filing of the petition for adoption. As no basis was raised to justify these failures, the referee held that the consent of John Sparks was not required for the Kuhlmanns' petition for adoption to go forward. This matter is not contested on appeal.

2. This case illustrates how important it is to settle all issues involving support and custody before emotional bonding occurs.

Claiming that the consent of Taylor's natural parents was not required due to their failure to communicate with or to support Taylor, on June 26, 1992, nineteen months after Taylor arrived in their home, the Kuhlmanns filed a petition for adoption in the probate court. The prerequisite examinations by caseworkers were prepared. Denise Sparks, represented by counsel, was deposed, and preparations were made for a hearing before a referee.

After several continuances, on January 26, 1993, the court granted the motion of Denise Sparks's attorney to withdraw as counsel because she "refused to cooperate and follow the advice of counsel." Denise Sparks appeared *pro se* at the June 10, 1993 hearing. In an abundance of caution, given the seriousness of the matter, the referee permitted Denise Sparks great latitude in the questioning of witnesses and in the scope of her closing argument.[3] We find this entirely appropriate under the circumstances.

After reviewing the documents prepared and receiving the testimony of Denise Sparks, Cathy Kuhlmann, and five other witnesses, including two called by Denise Sparks, the referee issued a report in which she proposed findings of fact and conclusions of law. The referee found that the Kuhlmanns had shown by clear and convincing evidence that Denise Sparks had not supported Taylor within the statutory period. The referee also found that Denise Sparks's failure to support Taylor was justified because of her lack of knowledge of her duty to support Taylor while he was in the Kuhlmanns' charge, combined with the absence of a court order requiring support.

From these factual findings, the referee concluded that Denise Sparks had presented a justifiable cause for her lack of support. The Kuhlmanns filed objections to the referee's report. The probate court overruled the objections, entered judgment in accordance with the referee's recommendation, and dismissed the petition. This timely appeal followed.

■ Initially, we note that the termination of a natural parent's right to object to the adoption of her child is a very serious matter, requiring strict adherence to the controlling statutes. R.C. Chapter 3107 contains the statutory provisions which govern adoption. Ordinarily, the written consent of a minor child's natural parents is required prior to adoption. R.C. 3107.07, however, provides that consent will not be required if:

"(A) * * * the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor *as required by law or judicial decree* for a period of at least one year immediately preceding

---

3. We note that Denise Sparks is represented by counsel in the appeal of this matter.

either the filing of the adoption petition or the placement of the minor in the home of the petitioner." (Emphasis added.)

The statute thus imposes a two-part responsibility upon the parent: to provide support and to communicate with the child. The petitioner has the burden of establishing, by clear and convincing evidence, the natural parents' noncompliance with either of these requirements. *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, paragraph one of the syllabus (referring only to the support element of the statute). Here, the Kuhlmanns successfully established that Denise Sparks failed to support Taylor for the year immediately preceding the filing of the petition. The referee also found that Denise Sparks had communicated with Taylor. That finding was not contested.

Once a petitioner has proven by clear and convincing evidence the failure to provide support within the required one-year period, the natural parent has the burden of going forward with some evidence to show that the failure was justified. The burden of proof remains with the petitioner. Once, however, the failure has been proven, the court must then decide whether the failure was justified. *Bovett,* paragraphs two and three of the syllabus. The question of whether a natural parent's failure to support his or her child has been proven to be without justifiable cause is a determination for the probate court and will not be disturbed on appeal unless against the manifest weight of the evidence. *Bovett,* paragraph four of the syllabus; *In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 23 OBR 330, 492 N.E.2d 140, paragraph two of the syllabus.

Therefore, the probate court's judgment will not be reversed as being against the manifest weight of the evidence if we find it supported by some competent, credible evidence. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

R.C. 3103.03, identifying a parent's obligation to support her minor children, states:

"(A) * * * The biological or adoptive parent of a minor child *must* support his or her minor children out of his or her property or by his or her labor. " * * *

"(D) If a parent neglects to support his or her minor child in accordance with this section and if the minor child in question is unemancipated, any other person, in good faith, may supply the minor child with necessaries for the support of the minor child and recover the reasonable value of the necessaries supplied from the parent who neglected to support the minor child." (Emphasis added.) See, also,

*State ex rel. Wright v. Indus. Comm.* (1943), 141 Ohio St. 187, 25 O.O. 277, 47 N.E.2d 209, paragraph one of the syllabus.

■ This parental obligation to support is not excused by the temporary custody of the child being lodged with another. R.C. 2151.011(B) provides:

"(10) 'Residual parental rights, privileges, and responsibilities' means those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including but not necessarily limited to the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, *and the responsibility for support.*" (Emphasis added.)

In this case, the basis of the referee's recommendation, accepted by the court, that the failure to support was justified was Denise Sparks's ignorance of the law. We hold that this finding is erroneous as a matter of law.

■ A parent's legally imposed duty to support her minor children is not dependent on her awareness of that obligation. *In re Adoption of Jedel* (Jan. 20, 1988), Medina App. No. 1624, unreported, 1988 WL 5952. While ignorance of an obligation may have been relevant to a consideration of whether Denise Sparks willfully failed to support Taylor, that determination is no longer germane under the scheme of R.C. Chapter 3107. See *Bovett,* 33 Ohio St.3d at 105, 515 N.E.2d at 922 at fn. 2 (reminding probate courts to apply the present statute, not the prior version requiring a finding of willful failure to support); see, also, *In re Weir* (Sept. 29, 1989), Lucas App. No. L–89–073, unreported, 1989 WL 111740 (noting prior statutory language required a finding of willful failure to support).

Everyone is presumed to know the law; ignorance of its dictates is not a ground for relief from its application. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 30, 548 N.E.2d 933, 936; *Roth v. State* (1894), 51 Ohio St. 209, 37 N.E. 259. Accordingly, ignorance of the obligation of support of one's minor children cannot, as a matter of law, be a justifiable cause for failing to do so. See, also, *In re Hinko* (1992), 84 Ohio App.3d 89, 616 N.E.2d 515 (holding that responsibility for support is not extinguished by a juvenile court order committing a child to a Youth Development Center); *In re Weir* (obligation not ended by parent's belief that responsibility was suspended for the duration of parent's incarceration in another state).

Having found the probate court's determination that ignorance of the law was a justifiable cause for nonsupport was erroneous, we still must ascertain whether there remains any competent, credible evidence in the record that would otherwise support its determination. We find none.

In determining whether the failure to support a child is justified, the Supreme Court has made a distinction between a parent who is unwilling but able to support, and a parent who is willing to support but unable to do so. *Masa,* 23 Ohio St.3d at 166, 23 OBR at 332, 492 N.E.2d at 143. The latter could constitute justification. We do not find this circumstance here, however.

The record before us demonstrates that there was a time that Denise Sparks was clearly homeless and unable to pay any support. She was not indigent, however, during the one-year period prior to the filing of the adoption petition. On the contrary, the record reveals that Sparks worked briefly for a temporary employment service in May 1991, then worked for Dyment from July 1991 until December 1992, where she received at least two raises, one of which was a merit raise. The Dyment job was full-time, with regular overtime available. She received medical benefits and could have had a family medical plan. Living with her mother during most of this period, she was able to contribute toward her mother's household expenses. She was also able to save some money. In response to a direct question, she admitted that during this period she had income to help support her children.

Thus, finding no competent, credible evidence to support the decision of the court that Denise Sparks had justifiable cause for failing to support Taylor, we hold that its judgment was against the manifest weight of the evidence. Pursuant to R.C. 3107.07(A), we hold that the Kuhlmanns may proceed with the adoption of Taylor without the consent of either parent.

Our holding that neither natural parent's consent is required to proceed with the petition for adoption does not end the proceedings below. That is only the first step in a two-step process. Even if the probate court makes a determination that a parent's consent is not required, the court must still go on to make a determination that adoption is in the best interest of the child. R.C. 3107.11 and 3107.14; *In re Adoption of Jorgensen* (1986), 33 Ohio App.3d 207, 515 N.E.2d 622; *In re Adoption of Jordan* (1991), 72 Ohio App.3d 638, 595 N.E.2d 963. A parent whose consent to the adoption has been determined not to be required still must be given notice of this best-interest hearing. R.C. 3107.11(A)(3).

In addition, R.C. 3107.14 provides:

"(C) If, at the conclusion of the hearing [mandated in R.C. 3107.11], the court finds that the required consents have been obtained or excused and that the adoption is in the best interest of the person sought to be adopted, it may issue, * * * a final decree of adoption or an interlocutory order of adoption, which by its own terms automatically becomes a final decree of adoption on a date specified in the order, which shall not be less than six months or more than one year from

the date of issuance of the order, unless sooner vacated by the court for good cause shown."

The Supreme Court of Ohio further has held that:

"Pursuant to R.C. 3107.14, adoption matters must be decided on a case-by-case basis through the able exercise of discretion by the trial court giving due consideration to all known factors in determining what is in the best interest of the person to be adopted.   (R.C. 3107.14[C], construed and applied.)"   *In re Adoption of Charles B.* (1990), 50 Ohio St.3d 88, 552 N.E.2d 884, paragraph three of the syllabus.

Therefore, as we hold as a matter of law that the consent of the natural parents to the adoption is not required in this case, we reverse the August 25, 1993 entry of the probate court dismissing the Kuhlmanns' petition for adoption.   This case is remanded to the probate court with instructions to proceed to the hearing mandated by R.C. 3107.11 and 3107.14(C) to determine the best interest of Taylor in determining whether to grant an order of adoption.

*Judgment reversed*
*and cause remanded.*

SHANNON, P.J., GORMAN and M.B. BETTMAN, JJ., concur.