[Cite as *In re I.M.B.*, 2012-Ohio-6264.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE:

ADOPTION OF IMB

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Julie A. Edwards, J.

Case No. 2012CA00137

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Probate Division Case No. 213388 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | December 31, 2012 |

APPEARANCES:

| For Plaintiff-Appellant | For Defendant-Appellee |
|---|---|
| JENNIFER LOWRY-JUERGENSEN<br>Crawford, Lowry & Associates<br>116 Cleveland Aveenue NW<br>Suite 800<br>Canton, Ohio 44702 | ARNOLD GLANTZ<br>4883 Dressler Road<br>Canton, Ohio 44718 |

*Hoffman, J.*

{¶1} Appellant Lara Barkheimer ("Grandmother") appeals the June 29, 2012 Judgment Entry entered by the Stark County Court of Common Pleas, Probate Division, which denied her petition for adoption of her grandson, IMB, upon finding the consent of the biological mother, Appellee Krystal Jennings ("Mother"), was required.

## STATEMENT OF THE FACTS AND CASE

{¶2} Mother is the biological mother of IMB (dob 8/29/06). Grandmother is IMB's maternal grandmother. In March, 2009, the Stark County Department of Job and Family Services ("SCDJFS") placed IMB with Grandmother after Mother was involved in an automobile accident while intoxicated and while IMB was in the vehicle, but not in a safety restraint. The Stark County Court of Common Pleas, Family Court Division, granted Grandmother custody of IMB in April, 2010.

{¶3} On November 15, 2011, Grandmother filed a Petition of Adoption. The probate court conducted a hearing on May 14, 2012. The following evidence was adduced at the hearing.

{¶4} Grandmother testified Mother had no communication with IMB for the one year period prior to her filing her adoption petition. Grandmother stated Mother made only one attempt to communicate with the child during this time which was in the form of a single text message. Grandmother acknowledged that she asked Mother to leave them alone and advised her everything was fine. Grandmother indicated she wanted to keep IMB safe and away from Mother because Mother had threatened Grandmother and IMB. Mother requested visitation in 2009, but at no other time thereafter. Mother

did not send IMB birthday cards, letters, or gifts, and did not have any other communication whatsoever with Grandmother.

{¶5} SCDJFS permitted visits between Mother and IMB, but required such visits be supervised by Grandmother. Grandmother, however, did not allow the visits, explaining she did not trust Mother. After refusing to permit supervised visits, Grandmother advised Mother to obtain an order from family court if she (Mother) wanted visitation rights. Grandmother testified the custody order was silent on the issue of visitation rights.

{¶6} Phone records reveal calls made between Mother's phone and Grandmother's phone on 15 different days between June, 2011, and November, 2011. Mother attempted to call four times on August 29, 2011, IMB's birthday. Phone records also establish multiple calls were made from Grandmother's phone to Mother's phone throughout June, 2011. A three-way call involving Grandmother's and Mother's phone numbers, which lasted under 2 minutes, occurred on IMB's birthday.

{¶7} Grandmother did not recall any phone conversations with Mother during the year prior to her filing the petition. Grandmother stated any conversation on her phone with Mother would have been by either Clark Barkheimer, her ex-husband with whom she resided, or Jeremy Barkheimer, her step-son. Grandmother noted she never responded to any phone calls or text messages from a phone number she did not recognize. Grandmother stated she never blocked Mother's phone number from her phone.

{¶8} Clark Barkheimer testified he did not know Mother's phone number. He also stated he never answered Grandmother's phone calls or text messages, but had

looked at her phone. Barkheimer acknowledged Grandmother had her phone on her person almost all of the time. He reiterated he would not listen to or answer Grandmother's phone. Barkheimer had never been served with or received a motion or request for visitation.

{¶9} Jeremy Barkheimer testified he never answered or touched Grandmother's phone. He stated he had no personal knowledge of any threats made by Mother to Grandmother, but maybe had heard of such threats once or twice. Jeremy had no knowledge of any visitation requests made by Mother.

{¶10} Mother testified she works full-time at KMart. Mother stated she attempted to contact Grandmother about 100 times in order to see IMB. Mother acknowledged her attempts to contact Grandmother decreased after the family court had granted custody of IMB to Grandmother, and Grandmother had advised the court Mother was harassing her. Mother maintained she still attempted to contact Grandmother.

{¶11} Mother testified she wants to be in her son's life. She admitted she did not ask for visitation at the custody hearing, but noted she was not allowed in the courtroom at the time. Mother has filed a motion for visitation in the family court. Mother has gifts for IMB. Mother explained she did not mail the gifts because she wanted IMB to receive such directly from her, feared Grandmother would keep IMB from receiving the gifts if she (Mother) mailed the items, and the postage would be a financial burden on her.

{¶12} Mother last saw and spoke with IMB before the custody matter was closed in April, 2010. Mother acknowledged the financial, emotional/psychological, and other

issues she had in the past. Mother stated she understood she could eventually regain custody of IMB.

**{¶13}** Joanne Corns testified she has known Mother since Mother was 12 years old. Corns' daughter and Mother were friends. Corns stated Mother had attempted to contact Grandmother on a number of occasions when Mother was at Corns' home. Corns recalled Grandmother would hang up on Mother when Mother asked to see IMB. Corns was with Mother when Mother called Grandmother on IMB's birthday. Corns heard Grandmother tell Mother IMB was better off without her and to leave them alone.

**{¶14}** Via Judgment Entry filed June 29, 2012, the trial court denied Grandmother's adoption petition. Although the trial court found Mother had failed to communicate with IMB during the one year period prior to Grandmother's filing the adoption petition, the trial court found Mother had justifiable cause for the failure to communicate. The trial court found Mother's consent to the adoption was necessary.

**{¶15}** It is from this judgment entry Grandmother appeals, assigning as error:

**{¶16}** "I. THE TRIAL COURT ERRED IN FINDING THAT THE BIOLOGICAL MOTHER'S CONSENT WAS NECESSARY FOR THE ADOPTION OF HER SON BY THE APPELLANT."

I

**{¶17}** The termination of a natural parent's right to object to the adoption of her child requires strict adherence to the controlling statutes. *In re Adoption of Kuhlmann* (1994), 99 Ohio App.3d 44, 649 N.E.2d 1279. Ordinarily, the written consent of a minor child's natural parents is required prior to adoption. R.C. 3107.07 provides exceptions to this requirement.

**{¶18}** R.C. 3107.07(A) states:

**{¶19}** "Consent to adoption is not required of any of the following:

**{¶20}** "(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

**{¶21}** Appellant has the burden of proof in this action. "The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, 481 N.E.2d 613. See also *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 104, 515 N.E.2d 919. "No burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable." *Holcomb* at 368.

**{¶22}** "Once the clear and convincing standard has been met to the satisfaction of the probate court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof. * * * The determination of the probate court should not be overturned unless it is unsupported by clear and convincing evidence." *Id.*

**{¶23}** Therefore, for Grandmother to prevail in this adoption proceeding without Mother's consent, she must prove by clear and convincing evidence that (1) there has been a failure of communication or support by the natural parent for the one-year period and (2) the failure is unjustified.

**{¶24}** Grandmother must also establish that the failure to communicate was without justifiable cause. "If the natural parent presents evidence showing that his failure to communicate was not unjustified, the petitioner must prove by clear and convincing evidence that such failure was not justified." *In re Adoption of Shea* (July 24, 1990), 10th Dist. No. 90–AP–245, 1990 WL 106468, citing *Holcomb.*

**{¶25}** *Holcomb* further held:

**{¶26}** "Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child. The question of whether justifiable cause exists in a particular case is a factual determination for the probate court and will not be disturbed upon appeal unless such determination is unsupported by clear and convincing evidence." 18 Ohio St.3d 361, 481 N.E.2d 613, paragraph three of the syllabus.

**{¶27}** In the instant action, although the trial court found Mother had failed to communicate with IMB during the one year period prior to Grandmother's filing of the petition for adoption, the trial court also found Mother presented evidence showing her failure to communicate was justified as the result of significant interference and

discouragement of communication by Grandmother. We find there is sufficient evidence to support the trial court's decision.

{¶28} The evidence presented at trial established Mother made sustained efforts over a significant period of time to communicate with her son. Phone records of both Mother and Grandmother's phones showed a number of calls between the two phones over a six month period. The trial court found Mother's testimony as to her reason for not mailing gifts to IMB to be credible. The trial court as the trier of fact is free to accept or reject any or all of the testimony of the witnesses. The trial court obviously chose to believe Mother in this instance.

{¶29} Upon review of the entire record in this matter, we find the trial court's determination Mother's consent to the adoption was necessary was supported by clear sufficient evidence.

{¶30} Grandmother's sole assignment of error is overruled.

{¶31} The judgment of the Stark County Court of Common Pleas, Probate Division, is affirmed.

By: Hoffman, J.

Gwin, P.J. and

Edwards, J. concur

s/ William B. Hoffman
HON. WILLIAM B. HOFFMAN


s/ W. Scott Gwin
HON. W. SCOTT GWIN


s/ Julie A. Edwards
HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE:

ADOPTION OF IMB                           :
                                          :
                                          :
                                          :
                                          :
                                          :          JUDGMENT ENTRY
                                          :
                                          :
                                          :          Case No. 2012CA00137


       For the reasons stated in our accompanying Opinion, the judgment of the Stark

County Court of Common Pleas, Probate Division, is affirmed.   Costs assessed to

Grandmother/Appellant.




                                   s/ William B. Hoffman_____
                                   HON. WILLIAM B. HOFFMAN


                                   s/ W. Scott Gwin_____
                                   HON. W. SCOTT GWIN


                                   s/ Julie A. Edwards_____
                                   HON. JULIE A. EDWARDS