[Cite as *In re Adoption of K.M.R.*, 2018-Ohio-1265.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | | JUDGES: |
| IN THE MATTER OF: | : | Hon. John W. Wise, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| THE ADOPTION OF K.M.R. | : | Hon. William B. Hoffman, J. |
| | : | |
| | : | |
| | : | |
| | : | Case No. CT2017-0049 |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Muskingum County
                             Probate Court, Case No. 20154029


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      April 2, 2018


APPEARANCES:

For Appellant                        For Appellee

MILES D. FRIES                       KYLE DAUGHERTY
Gottlieb, Johnston, Beam             46 East Berkley Street
&Dal Ponte, P.L.L.                   Zanesville, OH 43701
320 Main Street, P.O. Box 190
Zanesville, OH 43702-0190

*Gwin, J.,*

{¶1}    Appellant appeals the June 30, 2017 judgment entry of the Muskingum County Court of Common Pleas, Probate Division, which found, pursuant to R.C. 3107.07(A), the consent of the father/appellee K.D. was required for the adoption of the minor child.

*Facts & Procedural History*

{¶2}    Appellant is the great aunt and legal custodian of the minor child, K.R.  On November 15, 2011, K.R. was placed in the legal custody of appellant by the Muskingum County Court of Common Pleas, Juvenile Division.  Appellee is the biological father of K.R.  The biological mother of the child appeared at the hearing, but is not a party to this appeal.

{¶3}    On October 16, 2015, appellant filed a petition to adopt K.R.  Appellant alleged appellee's consent for the petition to adopt was not required because appellee failed, without justifiable cause, to provide more than de minimis contact with the child for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the child in her home.  On October 28, 2015, appellee submitted a letter to the trial court, objecting to the adoption.

{¶4}    The trial court held the adoption hearing on February 11, 2016.  At the hearing, appellant testified she is K.R.'s great aunt.  In June of 2011, the Muskingum County Juvenile Court granted appellant temporary custody of both K.R. and her biological mother, who was a minor at the time.  K.R.'s mother was removed from appellant's home in July of 2012 and placed in foster care.  The juvenile court awarded legal custody of K.R. to appellant in November of 2011.

{¶5}  Appellant testified that Exhibit A is the visitation agreement signed by appellant, appellee, and the biological mother of K.R.  Exhibit A is an entry from the juvenile court granting legal custody of K.R. to appellant.  It also contains visitation stipulations for both K.R.'s mother and appellee.  Exhibit A provides specific supervised parenting times for K.R's mother.  As to appellee, Exhibit A states, "the parties agree that [appellant] and the Father shall cooperate towards increasing his parenting time in the best interest of the minor child" and "the parties agree to terminate protective supervision of Muskingum County Children's Services."  Appellant testified she interpreted this agreement as requiring appellee have only supervised visitation due to his record of domestic violence and his adjudication as a Tier II sexual offender.

{¶6}  Appellant stated that initially, appellee visited K.R. at her home two times per week for two hours.  This increased to three days per week, two hours per visit, after the juvenile court awarded legal custody to appellant.  Further, that appellee came regularly and interacted well with K.R.  Between April 2013 and March 2014, appellant allowed appellee to have visitations at his mother's home with his mother supervising.  After March of 2014, appellee again returned to supervised visits at appellant's home at his suggestion.  Appellant testified that while appellee came to most visitations, he cancelled a few.

{¶7}  Appellant testified appellee last saw K.R. in June of 2014 and had not contacted her to see K.R. or asked about K.R. since June 2014, despite seeing appellant three times during the last six months for child support hearings.

{¶8}  In November of 2014, appellant received four text messages from appellee, each requesting unsupervised visitation with K.R.  Appellant testified that, in these text

messages, appellee stated his attorney told him to contact appellant to return to his two day per week visitation schedule, without supervision. Appellant stated she told appellee his lawyer could contact her lawyer because she did not have any papers stating appellee could have unsupervised visitation and told appellee he could come to appellant's house to see K.R. like he had been in the past, or not at all. Further, if appellee's lawyer believed he could have unsupervised visits, appellee's lawyer should contact her lawyer and get it settled. In the text messages, appellant also explained to appellee that he had already broken the court-ordered visitation by refusing to see K.R. since June of 2014 and, if appellee had any questions, to have his lawyer contact her lawyer.

{¶9} Appellant stated she twice changed her work schedule to accommodate appellee's visits, once in August of 2013 and once in December of 2014. Appellant testified she has not changed her phone number in eleven (11) years.

{¶10} Appellee testified he went to juvenile court to fill out paperwork for visitation of K.R. at the end of 2014 or the beginning of 2015, but they sent it back to him because he filled out something wrong. Appellee stated when he re-did the paperwork again, they told him he could not get a court-appointed attorney. Appellee testified he withdrew his first motion because he was told to do so before he could re-file a new motion. Appellee stated he re-filed the papers several months after he originally attempted to file them. However, he never heard anything after he re-filed the papers. Several months later, appellee again grabbed some paperwork to file in domestic relations court; however, he did not have the money to file them as the filing fee was $100. Appellee testified he never retained an attorney, but he believes he re-filed the paperwork at least twice. At the

hearing, counsel for appellant presented a copy of the paperwork that showed a filing date of September 26, 2014.

{¶11} When asked why he did not visit K.R. after June of 2014, appellee stated he was mad because the visits were not at his house. According to appellee, the juvenile court advised him his status as a Tier II sexual offender did not require his visitation be supervised. Thus, since appellant was not going to allow visitation at his home, he decided to go to court and let the court decide where and when he could have visitation. Appellee admitted he saw appellant at several child support hearings and did not ask about K.R. and did not ask to see K.R. Appellee testified he did not contact appellant since November of 2014. Appellee stated he did not contact appellant since then because appellant told him if he had any questions to contact her attorney. Appellee did not believe contacting appellant would do any good because she probably would not talk to him. Appellee stated this was his personal belief and he has no documentation showing appellant would not talk to him. When asked when he last visited with K.R., he stated he thought it was in December of 2014, but if appellant testified it was June of 2014, it could have been then.

{¶12} Both the pleadings of appellant and the testimony of K.R.'s mother at the adoption hearing established a hearing was set in juvenile court regarding visitation on February 18, 2016.

{¶13} The trial court issued a judgment entry on June 30, 2017. The trial court found appellee's consent to the adoption is necessary because appellant failed to prove, by clear and convincing evidence, that appellee's consent is not required in this case. The trial court determined appellant did show appellee failed to provide more than de

minimis contact with K.R. for the year in question. However, the trial court found appellant failed to show that it was without justifiable cause. The trial court stated appellee's actions were not, in essence, abandoning the child for the one year period in question.

{¶14} The trial court found the evidence and testimony presented demonstrated appellee attempted to have contact with K.R., acted in good faith in those attempts, contacted appellant to exercise parenting time and, due to a dispute regarding the supervision requirement and/or location of the visits, no visits occurred. Further, that because appellee was dissatisfied with appellant's insistence the visits be supervised in her home, appellee filed a request in juvenile court to modify visitation and/or grant him custody. Though no orders were issued by the juvenile court due to the failure of appellee to correctly file the pleadings, the trial court noted the testimony and evidence established a hearing was scheduled in juvenile court approximately one week from the date of the adoption hearing. The trial court also noted appellee's attempt to seek relief in domestic relations court. The trial court found appellee's "actions demonstrate legitimate, meaningful, and good faith efforts to arrange visits with his daughter in a reasonably amicable fashion and then when those failed to make use of the judicial system as it has been established to afford him a way to exercise his parental rights." The court thus found, by clear and convincing evidence, there is justifiable cause for appellee's failure to provide more than de minimis contact with K.R. for the one year in question. The trial court found appellee's consent was necessary, and dismissed appellant's adoption petition.

{¶15} Appellant appeals the June 30, 2017 judgment entry and assigns the following as error:

{¶16} "I. THE TRIAL COURT ERRED IN FINDING THAT PETITIONER FAILED TO SHOW FATHER'S FAILURE TO COMMUNICATE WITH THE MINOR CHILD WAS [NOT] JUSTIFIABLE."

I.

{¶17} In her assignment of error, appellant argues the trial court erred in finding that appellant failed to show appellee's failure to provide more than de minimis contact was without justifiable cause.

{¶18} The Supreme Court of the United States has recognized that natural parents have a fundamental liberty interest in the care, custody, and management of their children. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's right to raise a child is an essential civil right. *In re Murray*, 52 Ohio S.3d 155, 556 N.E.2d 1169 (1990). An adoption permanently terminates the parental rights of a natural parent. *In re Adoption of Reams*, 52 Ohio App.3d 52, 557 N.E.2d 159 (10th Dist. 1989). Thus, courts must afford the natural parent every procedural and substantive protection allowed by law before depriving the parent of the right to consent to the adoption of his child. *In re Hayes*, 79 Ohio St.3d 46, 679 N.E.2d 680 (1997).

{¶19} The termination of a natural parent's right to object to the adoption of his or her child requires strict adherence to the controlling statutes. *In re Adoption of Kuhlmann*, 99 Ohio App.3d 44, 649 N.E.2d 1279 (1st Dist. 1994). Ordinarily, the written consent of a minor child's natural parents is required prior to adoption. R.C. 3107.07 provides exceptions to this requirement if the parent of the minor has failed, without justifiable cause, to provide more than de minimus contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period

of at least one year immediately preceding the filing of the adoption petition.   R.C. 3107.07(A).

{¶20} The Ohio Supreme Court articulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A).  *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142.  The first step involves the factual question of whether the petitioner has proven, by clear and convincing evidence, the natural parent failed to provide for the maintenance and support of the child or failed to have more than de minimis contact with the child.   *Id.*   "A trial court has discretion to make these determinations, and, in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision."   *Id.* The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.   *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶21} If a probate court finds a failure to have more than de minimis contact, the court proceeds to the second step of the analysis and determines whether justifiable cause for the failure has been proven by clear and convincing evidence.  *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142.  The question of whether justifiable cause for the failure to contact the child has been proven in a particular case, "is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence."   *Id.*   This is because the probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony.   *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985).  We note that a judgment supported

by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by trial court. *Myers v. Garson*, 66 Ohio St.3d 610, 614 N.E.2d 742 (1993). The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶22} As explained above, appellant has the burden to prove, by clear and convincing evidence, (1) that the natural parent failed to have more than de minimis contact or failed to provide for the maintenance and support of the child, for the requisite one year period and (2) that there was no justifiable cause for the failure. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "No burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable." *Id.*

{¶23} Therefore, for appellant to prevail in this adoption proceeding without appellee's consent, she must prove by clear and convincing evidence that: (1) there has been a failure of communication or support by appellant for the one-year period and (2) the failure is unjustified. If the petitioner meets her burden of proof, then the natural parent has the burden of going forward with evidence to show some justifiable cause for his or her failure to support or contact the child. However, the burden of proof never shifts from the petitioner. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987).

{¶24} In this case, appellant's petition for adoption alleged appellee's consent was not required because for a period of at least one year immediately preceding the petition's filing, appellee failed, without justifiable cause, to provide more than de minimis contact with the child. The trial court found appellant established, by clear and convincing evidence, appellee failed to provide more than de minimis contact with the child for the year in question. However, the trial court found appellant failed to show appellee's failure was without justifiable cause.

{¶25} Upon our review of the record, we find the decision of the trial court that appellee had justifiable cause for his failure to contact K.R. is not against the manifest weight of the evidence as there exists some competent and credible evidence supporting the judgment rendered by trial court. The trial court found appellee attempted to have contact with K.R. and acted in good faith in those attempts. Both appellant and appellee confirmed appellee texted appellant in November of 2014 to request visitation with K.R. and that they disagreed on where the visits would take place and whether they would be supervised.

{¶26} Appellant testified it was her understanding from the November 15, 2011 entry and visitation agreement that appellee could only have supervised visitation due to his record of domestic violence and his adjudication as a Tier II sexual offender. Appellee testified he believed he could have unsupervised visitation. While the November 15, 2011 entry specifically provides that K.R.'s biological mother shall have visitation at specific times supervised by appellant, with regards to appellee, the agreement states only that the parties agree to terminate protective supervision of Muskingum County Children

Services and that appellant and appellee "shall cooperate towards increasing his parenting time in the best interest of the minor child."

{¶27} Appellant testified she told appellee he could come to her house to see K.R. like he had been in the past, or not at all. Further, that if he believed he could have unsupervised visitation or had any questions, his lawyer should contact her lawyer and get it settled. Appellee stated he did not contact appellant directly because appellant told him if he had any questions to contact her attorney and because he did not believe contacting her would do any good. Appellee stated this was his personal belief and testimony, and he had no documentation to show appellant would not talk to him. Further, appellee testified that since they disagreed on whether he could have unsupervised visitation, he decided to go to court and let the court decide when and where he could have visitation.

{¶28} While appellee and/or his attorney did not contact appellant's lawyer, appellee attempted to challenge the custody and/or visitation requirements by filing a request in juvenile court. Appellee testified he believed he re-filed the paperwork at least twice, however, no hearing was scheduled because he filled out something wrong. Further, that he got papers to file a request in domestic relations court, but did not ultimately file them because he did not have the money to pay the $100 filing fee. The testimony and evidence establish there was a hearing set regarding visitation in the juvenile court on February 18, 2016, approximately one week after the adoption hearing.

{¶29} Here, the trial court obviously chose to believe the testimony of appellee. As noted above, the trial court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony. *In re*

*Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985).  We may not substitute our judgment for that of the trier of fact.  *Pons v. Ohio State Medical Board,* 66 Ohio St.3d 619, 614 N.E.2d 748 (1993).  From the testimony and the evidence presented, the trial court could conclude appellee's failure to maintain more than de minimis contact with K.R. was justified.  See *In re Adoption of R.M.C.T.*, 5th Dist. Fairfield No. 17-CA-13, 2017-Ohio-5800; *In the Matter of the Adoption of K.O.D.K.*, 5th Dist. Ashland No. 15-COA-039, 2016-Ohio-1003.  Moreover, as we have previously noted, "[n]o burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable." *In re D.N.O.*, 5th Dist. Stark No. 2012-CA-00239, 2013-Ohio-2512.

{¶30}  Based on the foregoing, we overrule appellant's assignment of error.  The June 30, 2017 judgment entry of the Muskingum County Court of Common Pleas, Probate Division, is affirmed.


By Gwin, J., and

Wise, John, P.J., concur

Hoffman, J., dissents


WSG:clw 0313

*Hoffman, dissents*

{¶31} I respectfully dissent from the majority opinion.  My reasons follow.

{¶32} In its June 30, 2017 Entry, the trial court stated:

Father attempted to have contact with [the child] and acted in good faith in those attempts.   It is uncontroverted that Father contacted [Appellant] to exercise parenting time with his child, however, due to a dispute regarding the supervision requirement and/or location of the visits no visits occurred.  Dissatisfied with [Appellant's] insistence that the visits be supervised in her home the Father did in fact file a request in Juvenile Court to modify the visitation and/or grant him custody.  In that Father, acting pro se, purportedly failed to correctly file all necessary pleadings no hearing and/or orders were issued by the Juvenile Court to date.  While unclear, the testimony established that in fact a Mediation hearing was scheduled in Juvenile Court approximately one week from this hearing date. Dissatisfied with the lack of timely results in the Juvenile Court Father even attempted to seek relief in the Muskingum County Domestic Relations Court to effectuate seeing his child, to no avail.  Clearly Father's actions demonstrate legitimate, meaningful and good faith  efforts to arrange visits with [the child] in a reasonably amicable fashion and then when those failed to make use of the judicial system as it has been established to afford him a way to exercise his parental rights.  Therefore, the Court finds by clear and convincing evidence that there is justifiable cause for Father's failure to

provide more than de minimis contact with minor for the one year in question.

**{¶33}** I disagree with the trial court's conclusion, and find Appellee's failure to provide more than de minimis contact with the child was without justifiable cause.

**{¶34}** Pursuant to the juvenile court's November 15, 2011 order, which awarded legal custody of the child to Appellant, Appellee was granted supervised parenting time. Appellee initially visited the child three times per week at Appellant's home. Between April, 2013, and March, 2014, Appellant allowed Appellee to have visitations at his mother's home with his mother supervising. When Appellee's mother was no longer able to supervise the visits, Appellee again returned to supervised visits at Appellant's home. Appellee visited regularly until he was released from probation after which time he began cancelling visits. His last visit with the child was in June, 2014.

**{¶35}** Appellee told the trial court the visits did not stop because he did not want to see the child. Rather, Appellee felt once he had his own place and a driver's license, he "should be able to visit in my own house because – just 'cause I'm a registered sex offender don't mean I can't have visitation by myself." Tr. at 61. When the trial court asked Appellee if the visits stopped for the reason Appellant stated, Appellee responded:

No. I – I pretty much – I was mad because the visits wasn't going to be able to be at my house. After – I mean, I did agree and I – it was my idea to go back to [Appellant's], but I figure I was doing better and my license and my own place, I should be able to take my child there. And since she wasn't going to allow that, pretty much they was supposed to stay at

[Appellant'] and then I got mad and pretty much we was – I was like, I'll just go to court and try there." *Id.* at 62-63.

**{¶36}** Appellee filed paperwork in juvenile court in September, 2014, seeking to modify the visitation order and/or be granted custody of the child. The paperwork was returned to Appellee as it was not properly completed. Appellee never refiled the paperwork as he did not have the filing fee.

**{¶37}** When Appellee contacted Appellant requesting unsupervised visitation in November, 2014, Appellant advised him she would not permit unsupervised visitation as she had not received any documentation from the juvenile court advising her such was permitted. Appellant instructed Appellee to have his attorney contact her attorney, and informed him he could continue supervised visits with the child at her home. Appellee made no further requests to see the child.

**{¶38}** I find the fact Appellee was attempting to modify his visitation in juvenile court was not justifiable cause for failing to provide more than de minimis contact with the child. Appellee acknowledged the paperwork was never filed because he did not have the filing fee. Without filing the necessary paperwork, the juvenile court had nothing to rule on and a modification was not going to occur. Furthermore, there was no evidence Appellant hindered Appellee's ability to exercise his parenting time. Appellee could have visited the child, albiet under Appellant's supervision, but did not do so. Appellee acknowledged he stopped the visits because he was mad as he felt he should be able to visit with the child in his own home. I also find the fact Appellee did not like the

arrangement and was "mad" about it was not justifiable cause for failing to provide more than de minimis contact with the child.

{¶39} Accordingly, I find the trial court's determination Appellee's consent was necessary was against the manifest weight of the evidence.