[Cite as *In re Adoption of B.G.H*, 2022-Ohio-1911.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| THE ADOPTION OF B.G.H. | : | Hon. William B. Hoffman, J. |
|  | : | Hon. John W. Wise, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 2022 AP 01 0003 |
|  | : |  |
|  | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Tuscarawas County Court
of Common Pleas, Probate Division, Case
No. 2021 AD 03355

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     June 3, 2022

APPEARANCES:

For - Appellants

JEFFREY JAKMIDES
325 East Main Street
Alliance, OH 44601

For - Appellee

JAMES J. ONG
201 North Main Street
Uhrichsville, OH 44683

*Gwin, P.J.*

{¶1} Appellants appeals the January 3, 2022 judgment entry of the Tuscarawas County Court of Common Pleas, Probate Division, which found, pursuant to R.C. 3107.07(A), the consent of the father/appellee was required for the adoption of the minor child.

*Facts & Procedural History*

{¶2} Appellant A.H. is the Mother ("Mother") of the minor child, B.H. Appellant R.H. is the step-father of B.H. Appellee T.L. is the Father of B.H. ("Father"). B.H. was born on January 20, 2011.

{¶3} On August 10, 2021, R.H. filed a petition to adopt B.H. Appellants alleged Father's consent was not required because Father failed, without justifiable cause, to have more than de minimis contact with the child for a period of at least one year immediately preceding the filing of the adoption petition. On September 22, 2021, Father filed a notice of denial of consent, stating he did not consent to the proposed step-parent adoption. Father also simultaneously filed a motion to dismiss the adoption petition and a memorandum in opposition to the adoption petition.

{¶4} The trial court held a hearing on the adoption petition December 16, 2021.

{¶5} The parties have an ongoing case open in the Tuscarawas County Court of Common Pleas, Domestic Relations Division. The documents submitted by the parties at the hearing demonstrate the timeline of events in that case. In January of 2014, Mother and Father dissolved their marriage. B.H. was three years old at the time. Mother received custody of B.H. Father received visitation as set forth in the trial court's Standard Visitation and Companionship Orders. The parties exchanged B.H. at the Tuscarawas

County Sheriff's Office for visitation. In July of 2018, Father's visitation changed to every other week-end, from Thursday to Sunday. The parties do not dispute that Father has always paid his court-ordered child support payments, and is current with all payments.

{¶6} On January 27, 2020, Father filed a motion to modify companionship. Father filed a motion for contempt for lack of visitation on June 19, 2020. The court held a pre-trial on June 29, 2020, and ordered Father companionship time every Friday from 10:00 a.m. to 3:00 p.m., and stated Father may participate in joint counseling with B.H. Father subsequently dismissed his motion to modify and motion for contempt. He testified he did so because he and Mother agreed to give B.H. "time and space."

{¶7} Mother and Father were the only witnesses called at the hearing on the adoption petition. Many times, during cross-examination, Mother "could not recall" events. Similarly, several times during cross-examination, Father "did not know" why he did or did not do various things.

{¶8} Mother and Father testified to several incidents surrounding visitation through the years. Father testified that on Thanksgiving in 2016, Mother wanted B.H. on what was supposed to be his Thanksgiving. On cross-examination, Mother stated she "vaguely" remembered screaming at Father that he had to forego his time with B.H. on Thanksgiving and admitted Father and R.H. had "words" over the issue.

{¶9} Father testified to an incident in 2017 when Mother asked Father to come to her home so that B.H., at six years old, could explain why she did not want to visit his house in the summer. Father recalls that B.H. kept saying, "I don't know, I don't know."

{¶10} Father testified that, on Christmas of 2019, Mother and R.H. showed up at Father's home and demanded B.H. come with them. R.H. was screaming at Father.

Father called the police. When the police reviewed the court order, Mother and R.H. were asked to leave, while B.H. remained with Father.

{¶11} Mother and Father each testified to the incident in June of 2020. Mother testified Father told Mother that B.H. was not to come back to his house because B.H. lied to him. Mother stated that, after this incident, Father told her he would sign over his parental rights. Father admitted he told B.H. she did not need to be a liar. Father denied telling Mother he would sign over his parental rights.

{¶12} The parties went to a mediation on June 16, 2020. At the suggestion of the mediator, Mother, Father, and B.H. met at McDonald's, where B.H. told Father why she did not want to visit him. Both Mother and Father testified Mother asked Father to "back off" from visitation for a period of time to let things cool down and give B.H. some "time and space" to figure things out, and that Father agreed to Mother's request.

{¶13} Mother testified that, after the court-ordered Friday visitation in July of 2020, Father never appeared for visitation. Mother stated she has not done anything to restrict Father's visitation. Father stated he was working, and the entry did not specify the parties were supposed to meet at the police station.

{¶14} Mother was initially resistant to enrolling B.H. in counseling, despite Father's requests, until Father filed his motions in 2020. Mother schedules the counseling appointments. Mother admitted she never informed Father of the dates and times of the counseling sessions, but Mother believed the counselor notified Father of the sessions. Father stated neither Mother nor the counselor informed him of the dates of the sessions. However, Father admitted he did not contact the counselor to obtain the counseling schedule. In Spring of 2021, Father once texted Mother to ask when the counseling

session was so he could attend, but Mother did not respond.

{¶15} When asked what he did in the year prior to the adoption petition to have meaningful contact with B.H., Father testified he sent B.H. numerous text messages. Sometimes, B.H. would respond back, but not always. Further, he tried to reach out to Mother to ask to have lunch with B.H., but Mother did not respond to his text messages. Specifically, Father testified he texted Mother in November of 2020 and January of 2021 to ask about visiting with B.H. Mother did not respond. Additionally, though Mother testified on direct examination that Father had not contacted her since June of 2020 about B.H., Mother admitted on cross-examination that Father contacted her on October 19, 2020 to ask about some health issues B.H. was having, and on October 21, 2020 to ask Mother about the possibility of Father sitting in on one of B.H.'s counseling sessions. Mother did not respond to either of these texts from Father.

{¶16} Mother testified that, for the year prior to August 10, 2021, Father did not provide B.H. with any gifts, and did not send any cards. Mother was aware Father was texting B.H. Mother does not believe the texts were "meaningful contact" between Father and B.H. because they do not involve anything about repairing their relationship. However, Mother admitted in the text messages, Father tells B.H. he loves her, he misses her, and asks about school and activities. Father testified the texts were meaningful to him, and he tried to convey that he was concerned about B.H., and wanted her to know he misses her and loves her.

{¶17} On direct examination, Mother testified it would have been "meaningful contact" had Father called B.H. instead of texting her. Upon inquiry by the trial court, Mother admitted that Father attempted to call B.H. in September of 2020, but B.H. did not

answer the call.

{¶18} The exhibits submitted by Father demonstrate he texted B.H. on the following dates during the relevant one-year period: August 7, 2020, August 10, 2020, August 18, 2020, August 19, 2020, August 27, 2020, September 4, 2020, October 31, 2020, November 24, 2020, November 25, 2020, November 26, 2020, December 16, 2020, December 18, 2020, December 19, 2020, December 24, 2020, December 25, 2020, January 2, 2021, January 7, 2021, January 8, 2021, January 9, 2021, January 10, 2021, January 19, 2021, January 20, 2021, January 31, 2021, February 9, 2021, February 12, 2021, February 18, 2021, February 19, 2021, March 19, 2021, March 21, 2021, March 26, 2021, April 3, 2021, April 24, 2021, and July 17, 2021.

{¶19} In the texts, Father: asks B.H. how she is doing, asks B.H. how school is going, tells B.H. he loves her, tell B.H. he hopes she has a good day, talks about pets, discusses holiday plans, asks about B.H.'s holiday plans, sends B.H. photographs of her step-siblings, shows B.H. old pictures of her when she was little, and repeatedly asks B.H. to play an online game with Father and step-brother. B.H. generally responds to Father's texts with one- or two-word answers, including what she was doing at the moment or for the holidays. B.H. informed Father via text that she would not come to his house because he yelled at her and called her a liar.

{¶20} In several texts, Father specifically asks to meet or see B.H. On December 16, 2020, Father inquired about going to lunch together. B.H. responds she "will think about it." In January of 2021, Father asks B.H. if she will get some lunch with him sometime that week-end. B.H. responds she "will think about it." On January 10, 2021, Father invited B.H. to a late Christmas celebration at her Grandmother's house and says

he would like her to go if she wants to. B.H. did not respond. On March 19, 2021, Father asks B.H. if she wanted to get something to eat. B.H. did not respond. On April 24, 2021, Father asked B.H. when her softball games are because he wanted to come to a game and watch. B.H. says she doesn't know and doesn't want him at a game.

{¶21} B.H. initiated a text to Father on January 1, 2021 to wish him a Happy New Year.

{¶22} The trial court issued a judgment entry on January 3, 2022. The trial court included detailed findings of fact. These findings include the following: on Thanksgiving 2016, Mother and R.H. went to Father's home and engaged in an argument with Father regarding visitation while B.H. was in the car; on Christmas 2019, Mother and R.H. went to Father's home to attempt to remove B.H., but after the police reviewed the visitation orders, Mother and R.H. were instructed to leave and B.H. remained with Father; in 2020, Father found a text message on B.H.'s phone that said she didn't like being at Father's house; B.H. denied saying she didn't like being at Father's house, and then Father yelled at B.H. for lying; the parties met for mediation on June 16, 2020 during which the parties agreed to meet at McDonald's; at McDonald's, B.H. explained to Father why she did not wish to visit with him; Father has not seen B.H. since June 16, 2020; in June of 2020, Mother told Father he would have to participate in joint counseling with B.H. before Mother would let B.H. visit Father; Mother asked Father to back off and give B.H. some time and space to figure things out, and Father agreed; after the court order, Father failed to exercise Friday visitation and did not participate in counseling; Father never attempted to contact B.H.'s counselor to ask about joint counseling; Father had continuous communication with B.H. by texting throughout 2020 and 2021; Father engaged in text

conversations with B.H. regarding B.H.'s schooling, sporting event schedule, holiday plans, and asking to make plans to spend time together; Father sent B.H. numerous pictures via text; on September 4, 2020, Father texted Mother and asked her to have B.H. call him; on October 19, 2020, Father contacted Mother to discuss B.H.'s health; on October 21, 2020, Father texted Mother to ask the date of the child's next counseling appointment and Mother did not respond; on January 1, 2021, B.H. initiated a text with Father wishing him a Happy New Year; on January 8, 2021, Father texted B.H. and asked to take her out to lunch and she said she would think about it; and on April 24, 2021, Father asked the child for her softball schedule and she stated she did not want him at her games.

**{¶23}** The trial court then detailed the applicable law, and completed an analysis pursuant to R.C. 3107.07(A). The trial court stated it "has concerns with the credibility of both [Father] and [Mother's] testimony." The trial court noted that both Mother and Father contradicted their own testimony and answered "I do not recall" numerous times while testifying.

**{¶24}** The trial court found Father had ongoing correspondence with B.H. through text messages throughout the one-year period preceding the adoption petition. Further, Father made attempts to enforce his court-ordered visitation; although he never exercised this visitation after the filing of the motions. The trial court stated that, while Father did not have physical contact with B.H. during the one year preceding the filing of the adoption petition, Father made a continuous effort to speak with B.H. through text messaging, attempted to keep himself apprised of B.H.'s activities, and made some effort to see the child. Accordingly, appellants failed to prove, by clear and convincing evidence, that

Father failed to have more than de minimis contact with the child in the one year prior to the filing of the petition. The trial court found Father's consent to the adoption is necessary.

{¶25} Appellants appeal the January 3, 2022 judgment entry of the Tuscarawas County Court of Common Pleas, Probate Division, and assign the following as error:

{¶26} "I. THE TRIAL COURT'S FINDING THAT APPELLANTS DID NOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT APPELLEE FAILED TO HAVE MORE THAN DE MINIMIS CONTACT WITH THE CHILD IN THE ONE YEAR PRIOR TO THE FILING OF THE PETITION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶27} The Supreme Court of the United States has recognized that natural parents have a fundamental liberty interest in the care, custody, and management of their children. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's right to raise a child is an essential civil right. *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990). An adoption permanently terminates the parental rights of a natural parent. *In re Adoption of Reams*, 52 Ohio App.3d 52, 557 N.E.2d 159 (10th Dist. 1989). Thus, courts must afford the natural parent every procedural and substantive protection allowed by law before depriving the parent of the right to consent to the adoption of the child. *In re Hays*, 79 Ohio St.3d 46, 679 N.E.2d 680 (1997).

{¶28} The termination of a natural parent's right to object to the adoption of his or her child requires strict adherence to the controlling statutes. *In re Adoption of Kuhlmann*, 99 Ohio App.3d 44, 649 N.E.2d 1279 (1st Dist. 1994). Ordinarily, the written consent of

a minor child's natural parents is required prior to adoption. R.C. 3107.07(A) provides exceptions to this requirement. If the parent of the minor child has failed, without justifiable cause, to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition, then that parent's consent is not required. R.C. 3107.07(A).

{¶29} "Because cases such as these may involve the termination of fundamental parental rights, the party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). Clear and convincing evidence, "is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). A trial court is "free to believe all, part, or none of the testimony of any witness who appears before it." *Rogers v. Hill*, 124 Ohio App.3d 468.

{¶30} The Ohio Supreme Court articulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A). *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142. The first step involves the factual question of whether the petitioner has proven, by clear and convincing evidence, the natural parent failed to provide for the maintenance and support of the child or failed to have more than de

minimis contact with the child. *Id.* "A trial court has discretion to make these determinations, and, in connection with the first step of the analysis, an appellate court applies an abuse of discretion standard when reviewing a probate court decision." *Id.* The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶31}** If a probate court finds a failure to have more than de minimis contact, the court then proceeds to the second step of the analysis and determines whether justifiable cause for the failure has been proven by clear and convincing evidence. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142.

**{¶32}** Applying the appropriate standard of review, we must address whether the trial court abused its discretion by finding Mother and R.H. failed to prove, by clear and convincing evidence, that Father failed to have more than de minimis contact with B.H. In making that finding, the trial court stated Father made a continuous effort to speak with B.H. through text messaging, attempted to keep himself apprised of her activities, and made some effort to see B.H.

**{¶33}** While the prior version of the statute required a finding that the parent failed to "communicate" with the minor child for a period of one year, the legislature amended the statute to require a finding that the parent failed to "provide more than de minimis contact" with the minor child for a period of one year prior to the adoption petition. *In re Adoption of K.C.*, 3rd Dist. Logan No. 8-14-03, 2014-Ohio-3985.

**{¶34}** "De minimis contact" is not statutorily defined, but is generally determined to be contact – either attempted or successful – beyond a single occurrence. *In re J.D.T.*,

7th Dist. Harrison No. 11 HA 10, 2012-Ohio-4537; *In re Adoption of K.A.H.*, 10th Dist. Franklin No. 14AP-831, 2015-Ohio-1971 (more effort is required than a one-time contact).

**{¶35}** Appellants contend the trial court was incorrect in concluding Father's contact was more than de minimis because Father did not appear for Friday visits when he was permitted by the court. Further, that because Father did not physically see B.H. for the year prior to the adoption petition and because he failed to exercise visitation and ultimately dismissed his motions for companionship and contempt, he could not have had more than de minimis contact.

**{¶36}** However, physical contact is not required by the statute, and "more than de minimis contact" is not defined only as physical visitation. See *In re B.T.R.*, Morrow Dist. No. 2019 CA 0005, 2020-Ohio-2685 (affirming trial court's determination that there was more than de minimis contact when Father tried to contact the child through written correspondence and attempted by establish contact through court order); *In the Matter of K.M.R.*, 5th Dist. Muskingum No. CT2017-0049, 2018-Ohio-1265; *In re Adoption of C.A.H.*, 5th Dist. Knox No. 19 CA 000037, 2020-Ohio-1260 (consistent mail correspondence sufficient for more than de minimis contact); *In re Petition for Adoption of A.M.D.*, 7th Dist. Mahoning No. 16 MA 0052, 2016-Ohio-6976 (more than de minimis contact is not defined only as physical visitation; other forms of contact are also considered such as gifts, cards, phone calls, texts, and financial support).

**{¶37}** Appellants characterize Father's text messages as "occasional" and "lacking in follow-through" and thus argue they do not constitute more than de minimis contact.

**{¶38}** Based on our review of the record, we find the trial court did not abuse its discretion in concluding appellants did not prove, by clear and convincing evidence, that Father failed to have more than de minimis contact with B.H. The record reflects Father made more than a de minimis effort to contact B.H. Father timely paid his child support. Though Mother testified if Father would have called B.H. it would have been "meaningful contact," the undisputed testimony is that Father did try to call B.H. once, but she did not answer the phone. Simply because the phone contact was not successful does not mean it cannot be considered in the "de minimis contact" analysis. Father texted B.H. on more than thirty days within the applicable one-year period. In addition to telling her he loved her and missed her, he asked about her day, and asked about her activities, holidays, family, and health. Father also sent pictures of her step-siblings, and inquired numerous times about joining in an online game with him and B.H.'s step-brother. It is clear B.H. was receiving the texts, as she generally provided short answers to Father's inquiries.

**{¶39}** Additionally, Father made attempts to see B.H. In several texts, Father specifically asks to see or meet B.H. B.H. either did not respond, or responded she would "think about it." Father also texted Mother attempting to see B.H. In Fall of 2020 and Spring of 2021, Father texted Mother to ask when a counseling session was so he could attend, but Mother did not respond to either text. Father texted Mother in November of 2020 and January of 2021 to ask about visiting with B.H., but Mother did not respond. Father also texted Mother in October of 2020 to ask about some health issues B.H. was having.

**{¶40}** The trial court's determination that Father's contact with B.H. in the year preceding the filing of the adoption petition was more than de minimis was not an abuse of discretion.

**{¶41}** Based on the foregoing, appellants' assignment of error is overruled.

**{¶42}** The January 3, 2022 judgment entry of the Tuscarawas County Court of Common Pleas, Probate Division, is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur